SALTER, J.
Irina Chevaldina appeals an order granting a preliminary injunction[1] to “enjoin tortious interference, stalking, trespass and defamatory blogs” entered in favor of Raanan Katz and the other named appellees, plaintiffs in the circuit court.[2] We vacate the order and injunction.

Background

Raanan Katz and RK Associates own and manage commercial properties in South Florida. Ms. Chevaldina and her husband Dmitri Chevaldine are former tenants of the RK Associates retail centers. More precisely, the Chevaldines are very unhappy former tenants of RK Associates. This appeal is one of eight South Florida legal proceedings between the Chevaldines and Raanan Katz/RK Associates.
In 2009, the Chevaldines sued Raanan Katz, Daniel Katz,[3] and two of Raanan Katz’s companies in Miami-Dade circuit court for breach of lease and defamation. Both cases were dismissed with prejudice in 2010. In May 2011, the appellees became aware of an anonymous blog about RK Associates and Mr. Katz. Some illustrative blog posts were: “Bottom line, when you sign a lease with RK Associates, Raanan Katz goes after YOUR money no matter what”; “If you do not want to lose your business, your investment, your ideas, think twice, talk to their tenants, and do your research to learn what can happen to you after signing the lease with *1089 the landlord like RK Associates”; and “Raanan Katz and Daniel Katz are the most immoral human-being[s] in the world. They are dare enough to take bread from little Jewish special needs child to support their luxury lifestyle [sic].”
The appellees filed a complaint in the circuit court alleging defamation per se and libel as against the anonymous blogger. After obtaining discovery from an internet service provider identifying Irina Chevaldina as the previously-anonymous blogger, the appellees filed a second amended complaint adding counts for tor-tious interference with contractual relationships, tortious interference with advantageous business relationships, invasion of privacy, trespass, civil conspiracy, injunction to stop tortious interference, injunction to prevent trespass, and injunction to prevent stalking.
In 2012, Raanan Katz also filed a civil lawsuit in the United States District Court for the Southern District of Florida against Ms. Chevaldina alleging copyright infringement. Mr. Katz alleged that he owned (by assignment) all rights to a photo of himself published in Israel the preceding year. The photo is somewhat unflattering — in it, Mr. Katz has part of his tongue sticking out of the far left side of his mouth. Mr. Katz alleged that Ms. Chevaldina placed the image on her blogs without his authorization, and that she had “realized and continues to realize profits or other benefits rightly belonging to Katz” by doing so. The photo appears in several of the blog entries alleged to be defamatory in the circuit court action as well.
In this appeal, we review a temporary injunction in the circuit court action which determined that “the Defendants have blogged extensively about the Plaintiff and many of these blogs are arguably defamatory. Although ultimately a defamation trial will be held, this Court ORDERS the Defendants not to enter defamatory blogs in the future.” The court determined that:
Plaintiffs have a substantial likelihood of ultimately prevailing on the merits of their claims, and there is a substantial threat of irreparable injury to the Plaintiffs if injunctive relief is not granted, that the threatened injury to Plaintiffs outweighs whatever damage the injunction would cause the Defendants, and that the injunction would not be adverse to the public interest.
The order enjoined Ms. Chevaldina from “directly or indirectly interfering in person, orally, in written form or via any blogs or other material posted on the internet or in any media with Plaintiffs’ advantageous or contractual and business relationships,” ordered Ms. Chevaldina to remain at least 200 yards away from the appellees and their immediate families, and enjoined Ms. Chevaldina from trespassing upon the appellees’ properties. Ms. Chevaldina appealed the entry of the injunction under Florida Rule of Appellate Procedure 9.130(a)(3)(B).

Analysis

A temporary injunction “should be granted only sparingly and only after the moving party has alleged and proved facts entitling it to relief.” Liberty Fin. Mortg. Corp. v. Clampitt, 667 So.2d 880, 881 (Fla. 2d DCA 1996). In order to establish the right to a temporary injunction the moving party must show: the likelihood of irreparable harm; the unavailability of an adequate remedy at law; the substantial likelihood of success on the merits; the threatened injury to the petitioner outweighs the possible harm to the respondent; and the granting of the temporary injunction will not disserve the public interest. E.g., City of Miami Beach v. Kuoni Destination Mgmt., Inc., 81 So.3d 530, 532 (Fla. 3d DCA 2012).
*1090 We review the temporary injunction for an abuse of the trial court’s discretion. Angelino v. Santa Barbara Enters., 2 So.3d 1100, 1103 (Fla. 3d DCA 2009).
A. Injunction Against Tortious Interference and Defamatory Blogs
Injunctive relief is not available to prohibit the making of defamatory or libelous statements. See, e.g., Vrasic v. Leibel, 106 So.3d 485, 486 (Fla. 4th DCA 2013). A temporary injunction directed to speech is a classic example of prior restraint on speech triggering First Amendment concerns. Id. There is, however, a limited exception to the general rule where the defamatory words are made in the furtherance of the commission of another intentional tort. E.g., Murtagh v. Hurley, 40 So.3d 62 (Fla. 2d DCA 2010); Zimmerman v. D.C.A. at Welleby, Inc., 505 So.2d 1371 (Fla. 4th DCA 1987).
Both Zimmerman and Murtagh involved statements made as part of alleged tortious interference with advantageous business relationships. In Zimmerman, the court applied the exception because the party demonstrated a special harm of irreparable injury, i.e., that the damages were “incalculable.” Similarly, in Murtagh, the court held that injunctive relief was an available remedy because it was alleged that the defamatory statements caused current medical patients to terminate their relationships with Dr. Murtagh. Murtagh, 40 So.3d at 66-67. However, the court found that Dr. Murtagh had not established entitlement to an injunction because he failed to “present any evidence that demonstrated or would allow an inference that [the defendant’s] conduct ‘had a deleterious effect on’ Dr. Murtagh’s business.” Id. at 67.
Here, the appellees alleged defamation and intentional interference with advantageous business relationships. As recognized in Murtagh, if the appellees presented “proof to a reasonable certainty of the cause of action stated in the complaint,” then they would have established a right to injunctive relief under Zimmerman. Id. However, as in Murtagh, the record before us fails to support an inference that Ms. Chevaldina’s blogs are having a deleterious effect upon prospective tenants. The temporary injunction should have been denied for a failure to show with reasonable certainty the elements of tor-tious interference, as there was no evidence of unjustified interactions with specific parties known to be involved, or likely to be involved, in an advantageous business or contractual relationship with the appellees. See Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 815 (Fla.1995) (holding that the tort of interference is not met by communications to the public at large).
At the hearing on the motion for an injunction, a real estate broker testified (over a hearsay objection) about a call he received from the director of real estate from a fast food chain, Subway, expressing concern about some of Ms. Chelvadina’s blog posts. The witness admitted, however, that Subway had not withdrawn from any leases in the RK Associates properties, and that he himself had not stopped doing business with RK Associates after reading the blogs. Subway had not gone forward with one lease transaction, he said, “because of a space requirement,” not because of the blogs.
The remainder of the appellees’ “evidence” at the injunction hearing consisted of requests for judicial notice of certain pleadings, two affidavits (over objection and from declarants who did not testify), and testimony about “search engine optimization techniques” and “word stuffing” on the internet. While interesting, these materials fall woefully short of competent, *1091 substantial evidence that any blog entry interfered with any business or contractual relationship of the appellees.[4]
Additionally, the injunction is overly broad. An injunction should never be broader than is necessary to secure to the injured party relief warranted by the circumstances involved in the particular case. E.g., DeRitis v. AHZ Corp., 444 So.2d 93, 94 (Fla. 4th DCA 1984) (quoting Fla. Peach Orchards, Inc. v. State, 190 So.2d 796, 798 (Fla. 1st DCA 1966)). Entry of an overly broad injunction can constitute a violation of the First Amendment. See, e.g., Animal Rights Found. of Fla., Inc. v. Siegel, 867 So.2d 451, 456 (Fla. 5th DCA 2004); Adoption Hot Line, Inc. v. State, 402 So.2d 1307, 1308-09 (Fla. 3d DCA 1981). The injunction under review prohibits Ms. Chevaldina from: “directly or indirectly interfering in person, orally, in written form or via any blogs or other material posted on the internet or in any media with Plaintiffs’ advantageous or contractual business relationships”; and “directly or indirectly publishing any blogs or any other written or spoken matter calculated to defame, tortuously interfere with, invade the privacy of, or otherwise cause harm to Plaintiffs.” This injunction improperly burdens Ms. Chevaldina’s speech more than necessary, attempts to enjoin future defamation, and fails to put Ms. Chevaldina on notice as to what she may or may not do under the injunction.
B. Injunction Against Stalking and Trespassing
Section 784.046, Florida Statutes (2012), provides that a person may obtain an injunction for protection in cases involving repeat violence and requires that a sworn petition include specific facts and circumstances to form the basis upon which relief is sought. Repeat violence is defined as two incidents of stalking or violence. The act of stalking consists of “willfully, maliciously, and repeatedly” following or harassing another person. § 784.048(2). The term “harass” is defined as engaging in a series of acts over a period of time “directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose.” § 784.048(2). The trial court, pursuant to section 784.046, may rely upon a verified pleading and affidavit, and “[w]hen it appears to the court that an immediate and present danger of violence exists, the court may grant a temporary injunction which may be granted in an ex parte hearing, pending a full hearing, and may grant such relief as the court deems proper.” § 784.046(6)(a).
In the present case, there was no testimony regarding the temporary injunction against stalking and trespassing, and the affidavits and verified pleadings fail to form the basis upon which relief is sought in accordance with section 784.046(4)(a). The verified pleading and affidavits of Suzanne and Daniel Katz cited the incident of August 8, 2012, but failed to state with specificity other incidents in which Ms. Chevaldina had come in close proximity of their place of business for the purposes of harassing. The appellees argue that Ms. Chevaldina’s blog posts constituted “cyber-stalking” and therefore provided “incidents of violence,” i.e., stalking, as to justify an injunction pursuant to section 784.046. However, the appellees failed to introduce evidence that specific blog posts were being used “to communicate, or to cause to be communicated, words, images, or language ... directed at a specific per *1092 son, causing substantial emotional distress to that person and serving no legitimate purpose.” § 784.048(l)(d); see also Murphy v. Reynolds, 55 So.3d 716, 717 (Fla. 1st DCA 2011) (“ ‘Harassment’ is a ‘course of conduct directed to a specific person that causes substantial emotional distress ... and serves no legitimate purpose.’ ‘Cyberstalking’ entails harassment by means of electronic communications.”). Consequently, the record lacks a basis for finding stalking and fails to support a temporary injunction to enjoin stalking and trespassing.
C. Lack of Factual Findings
Finally, the trial court failed to make specific findings to support the elements required for the entry of an injunction. See Fla. R. Civ. P. 1.610. “A temporary injunction that merely recites legal conclusions is insufficient to support its entry.” Angelino v. Santa Barbara Enters., 2 So.3d 1100, 1103 (Fla. 3d DCA 2009). The order on appeal fails to set forth factual findings justifying the entry of the temporary injunction and is therefore inconsistent with the requirements of Florida Rule of Civil Procedure 1.610. Nor does the transcript of the hearing on the motion provide any such specific findings.

Conclusion

Angry social media postings are now common. Jilted lovers, jilted tenants, and attention-seeking bloggers spew their anger into fiber-optic cables and cyberspace. But analytically, and legally, these rants are essentially the electronic successors of the pre-blog, solo complainant holding a poster on a public sidewalk in front of an auto dealer that' proclaimed, “DON’T BUY HERE! ONLY LEMONS FROM THESE CROOKS!” Existing and prospective customers of the auto dealership considering such a poster made up their minds based on their own experience and research. If and when a hypothetical complainant with the poster walked into the showroom and harangued individual customers, or threatened violence, however, the previously-protected opinion crossed the border into the land of trespass, business interference, and amenability to tailored injunctive relief. The same well-developed body of law allows the complaining blogger to complain, with liability for money damages for defamation if the complaints are untruthful and satisfy the elements of that cause of action. Injunctive relief to prohibit such complaints is another matter altogether.
For all these reasons, the non-final “Order on Plaintiffs’ Motion for Preliminary Injunction to Enjoin Tortious Interference, Stalking, Trespass, and Defamatory Blogs,” is reversed and vacated in its entirety. The scope of our review and this opinion are confined to the claims and motions for temporary injunctive relief. We express no opinion regarding the merits of the still-pending claims for money damages by the appellees based on alleged defamation, trespass, invasion of privacy, tortious interference, and conspiracy.
Reversed; non-final order vacated.

. The appellees filed both an emergency motion for a temporary injunction and a motion for a preliminary injunction in the circuit court. The second amended complaint seeks an "injunction.” Florida Rule of Civil Procedure 1.610 only differentiates between "temporary injunctions,” which may under limited circumstances be granted without notice, and "injunctions.” "Preliminary injunctions” and "temporary restraining orders” are unique to federal practice under Federal Rule of Civil Procedure 65. Here the circuit court issued, and we are reviewing, a "temporary injunction” entered after notice and an evi-dentiary hearing, but before a trial of all issues on the merits.

. The companies named as the appellees are referred to collectively here as RK Associates, though the group is now known as RK Centers.

. Daniel Katz, also a plaintiff below and ap-pellee here, is the son of Raanan Katz and an officer of RK Associates. Appellee Suzanne Katz is Daniel's wife and Raanan Katz’s daughter-in-law.

. Indeed, a review of the actual blog posts in the appendix to the second amended complaint, and the absence of comments and "followers,” indicate that the posts were largely ignored.