DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**CONCERNED CITIZENS FOR JUDICIAL FAIRNESS, INC.,**
Appellant,

v.

**PHILIP J. YACUCCI,**
Appellee.

No. 4D14-2971

[September 3, 2014]

Appeal of a non-final order from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; George A. Shahood, Senior Judge; L.T. Case No. 2014CA001711.

Louis C. Arslanian, Plantation, for appellant.

Ashley N. Minton of Minton Law, P.A., Fort Pierce, for appellee.

GROSS, J.

This case involves a temporary injunction issued during a political campaign that limits what a political organization may say about a candidate. For multiple reasons, not the least of which is that the injunction is a prior restraint on speech in violation of the First Amendment, we entered an order dated August 22, 2014, reversing the temporary injunction in its entirety. This is the opinion that explains that ruling.

This case arises out of a contested race for county court judge in St. Lucie County. Philip Yacucci is the incumbent and Stephen Smith is the challenger. The election was on August 26, 2014. Concerned Citizens for Judicial Fairness, Inc. is an electioneering communications organization.[1]

---

[1]Section 106.011(9), Florida Statutes (2014), defines an "[e]lectioneering communications organization" as:

> [A]ny group, other than a political party, affiliated party committee, or political committee, whose election-related activities are limited

Yacucci filed suit against Smith and Citizens for defamation, invasion of privacy, and intentional infliction of emotional distress. The complaint sought damages and injunctive relief.

The salient facts alleged in the complaint can be summarized as follows. Citizens and Smith are linked because the only contributors to Citizens are affiliated with the law firm that employs Smith. There is a website pertaining to this election. The complaint generally alleges that Smith and Citizens are responsible for what is posted on the website without explaining how or why.

The home page of the website says this:

Palm Beach Post or State Attorney Investigation, Yacucci Accused of:

> *Battery on his wife
>
> *Aggravated Assault with a Firearm
>
> *Unlawful Compensation
>
> *Failure to pay child support

The website publishes a series of headlines above the first sentence of newspaper stories. Clicking on a headline takes the reader to what purports to be the full newspaper story. Each story is identified as being published in *The Palm Beach Post* and by the date. Eight of the stories were published from 1992-93; one story was published in 2007. The reporters who wrote the stories are identified.

The website contains links to "three commercially produced video advertisements." The complaint describes the videos as follows:

> The first video alleged that a State Attorney investigation revealed that a witness testified that the Plaintiff was in a car with his children when he pointed a gun at a man and said "I'm going to blow your head off." The video further stated that the same witness said the Plaintiff pushed his wife and said he was going to kill her.

---

to making expenditures for electioneering communications or accepting contributions for the purpose of making electioneering communications . . . .

The second video alleged that the Plaintiff was accused of battery on his wife, aggravated assault with a firearm, and unlawful compensation. The video goes on to discuss the Plaintiff's current salary and the alleged foreclosure of his home. Finally the video discusses the allegation that the Plaintiff was threatened with 20 days in jail for failure to pay child support.

The third video again discussed the alleged foreclosure of the Plaintiff's home and the threat to the Plaintiff of 20 days in jail for failure to pay child support.

The complaint alleges that an "individual" identified as Irene Leroux emailed members of the Florida Bar, "en masse," a link to the website. Based on "a diligent investigation," Yacucci "became aware" that Citizens "purchased what looks to be large blocks of commercial time, presumably to air the videos located on the website over broadcast television."

Yacucci generally alleges that the statements contained in the newspaper stories were false. The complaint sets forth reasons why Yacucci believes the allegations are misleading. For example, attached as an exhibit to the complaint is a Close-Out Memo prepared on December 29, 1991, by a state attorney appointed to investigate certain criminal allegations. The Memo explains in detail the reasons that no criminal charges were filed against either Yacucci or his former wife or his former wife's friend.

Yacucci "verif[ied] and approve[d]" the "contents" of the complaint. We note that such a verification fails to comply with Florida Rule of Civil Procedure 1.110(b) which provides that "[w]hen verification of a document is required, the document filed shall include an oath, affirmation, or the following statement":

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Count V of the complaint sought a temporary injunction. There was a temporary injunction hearing at which the attorneys for all sides appeared. No witnesses were called. No exhibits were introduced in evidence. Over objection, Yacucci's attorney argued as if the allegations in the complaint were established facts. She complained about the website's "many false and misleading claims" and provided unsworn testimony about the true facts in the case. She said that an FDLE investigation "pretty much

refuted" certain criminal charges and that no charges were filed "because there wasn't enough evidence on them."

On August 8, 2014, the circuit court declined to enter a temporary injunction against Smith; the court did, however, enjoin Citizens

> from operating [the website] from disseminating any material contained therein in the form of websites, direct mailers, television commercials, radio commercials and/or any other format for dissemination, or any other information about the Plaintiff.

The court set a $10,000 injunction bond.

On August 13, 2014, this Court stayed the operation of the temporary injunction.

As an extraordinary remedy, a temporary injunction should be sparingly granted and only after the moving party has alleged and proved facts entitling it to relief. *See Liberty Fin. Mtg. Corp. v. Clampitt*, 667 So. 2d 880, 881 (Fla. 2d DCA 1996); *Hiles v. Auto Bahn Fed'n, Inc.*, 498 So. 2d 997, 998 (Fla. 4th DCA 1986). At a contested hearing, the party opposing an injunction has the opportunity to cross examine witnesses and challenge the allegations of the complaint. Only where a temporary injunction is sought without notice is the evidence in support of the injunction limited to affidavits or a verified pleading. *See* Fla. R. Civ. P. 1.610(a)(2).

The party seeking the injunction must prove: (1) it will suffer irreparable harm unless the injunction is entered, (2) there is no adequate remedy at law, (3) there is a substantial likelihood that the party will succeed on the merits, and (4) that considerations of the public interest support the entry of the injunction. *See Masters Freight, Inc. v. Servco, Inc.*, 915 So. 2d 666, 666 (Fla. 2d DCA 2005); *Cordis Corp. v. Prooslin*, 482 So. 2d 486, 489-90 (Fla. 3d DCA 1986). The party seeking the injunction "has the burden of providing competent, substantial evidence" to satisfy each of these elements. *SunTrust Banks, Inc. v. Cauthon & McGuigan, PLC*, 78 So. 3d 709, 711 (Fla. 1st DCA 2012). A trial court's order granting a temporary injunction must contain "[c]lear, definite, and unequivocally sufficient factual findings [to] support each of the four conclusions necessary to justify entry of" the injunction. *Liberty Fin.*, 667 So. 2d at 881 (quoting *City of Jacksonville v. Naegele Outdoor Advertising Co.*, 634 So. 2d 750, 754 (Fla. 1st DCA 1994), *approved*, 659 So. 2d 1046 (Fla. 1995)).

For numerous reasons, the temporary injunction cannot stand.

First, Yacucci offered no evidence to support the injunction, only the unsworn argument of counsel. An attorney's unsworn argument does not constitute evidence. *See, e.g.*, *Rowe v. Rodriguez-Schmidt*, 89 So. 3d 1101, 1104 (Fla. 2d DCA 2012).

Second, the temporary injunction contains no factual findings whatsoever and lacks the necessary precision about what is being enjoined. Florida Rule of Civil Procedure 1.610(c) states that every temporary injunction "shall specify the reasons for entry [and] shall describe in reasonable detail the act or acts restrained without reference to a pleading or another document." Contrary to the rule, the court's order refers generally to the website, so the injunction is overly broad. *See Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So. 3d 1086, 1091 (Fla. 3d DCA 2014). The order lacks the detail to support "each of the four conclusions necessary to justify entry of" the injunction. *Liberty Fin.*, 667 So. 2d at 881 (quoting *City of Jacksonville*, 634 So. 2d at 754).

Third, the general rule in Florida is that "temporary injunctive relief is not available to prohibit the making of defamatory or libelous statements." *Vrasic v. Leibel*, 106 So. 3d 485, 486 (Fla. 4th DCA 2013). One reason for this is that there is an adequate remedy at law, an action for damages. *Id.* As public figures, political candidates may pursue defamation actions, provided that they are able to prove actual malice on the part of the defamer. *See Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 293-94 (Fla. 2d DCA 2001); *Pullum v. Johnson,* 647 So. 2d 254, 257 (Fla. 1st DCA 1994); *Barnes v. Horan*, 841 So. 2d 472, 479-80 (Fla. 3d DCA 2002) (involving defamation action by losing candidate for State Attorney).

Yacucci has failed to demonstrate that this case falls within the limited exception to the general rule for cases where "defamatory words are made in the furtherance of the commission of another intentional tort." *Chevaldina*, 133 So. 3d at 1090; *see, e.g., Murtagh v. Hurley*, 40 So. 3d 62 (Fla. 2d DCA 2010) (involving tort of tortious interference with advantageous business relationship); *Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So. 2d 1371 (Fla. 4th DCA 1987) (same). On its face, the complaint fails to demonstrate the conduct required for intentional infliction of emotional distress—conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Allen v. Walker*, 810 So. 2d 1090, 1091 (Fla. 4th DCA 2002) (quoting *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985)). The law expects a political candidate to accept republication of

previous newspaper stories "as their lot. . . . [T]he first amendment demands a hide that tough." *Ollman v. Evans*, 750 F.2d 970, 1005 (D.C. Cir. 1984) (Bork, J., concurring) (concerning a private defamation suit against newspaper columnists for statements made during a political controversy). Invasion of privacy is subject to the same First Amendment considerations as defamation and provides a separate cause of action for redress. *See Post-Newsweek Stations Orlando, Inc. v. Guetzloe*, 968 So. 2d 608, 610-11 (Fla. 5th DCA 2007).

Fourth, and most importantly, the trial court's injunction, issuing in the last three weeks of a political campaign, is "a classic example of prior restraint on speech triggering First Amendment concerns." *Vrasic*, 106 So. 3d at 486; *Chevaldina*, 133 So. 3d at 1090. Such concerns make the injunction contrary to the public interest. "[T]he First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco Cnty. Democratic Ctr. Comm.*, 489 U.S. 214, 223 (1989) (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)).

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). To allow a temporary injunction such as this one to stand would be to make courts into censors, deciding what candidates can and cannot say. The political process should not be subject to the whims of a local judge who may favor one candidate over another. "The concept that a statement on a public issue may be suppressed because it is believed by a court to be untrue is entirely inconsistent with constitutional guarantees and raises the spectre of censorship in a most pernicious form." *Wilson v. Superior Court*, 532 P.2d 116, 120 (Cal. 1975).

For these reasons, we reverse the temporary injunction in its entirety.

WARNER and MAY, JJ., concur.

\*          \*          \*