DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ALKIVIADES A. DAVID,**
Appellant,

v.

**JOHN TEXTOR,**
Appellee.

No. 4D14-4352

[January 6, 2016]

Appeal of a non-final order from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; F. Shields McManus, Judge; L.T. Case No. 14-267 DV.

Ryan G. Baker of Baker Marquart LLP, Los Angeles, California, and Gary S. Betensky, Manuel Farach, and Leslie A. Metz of Richman Greer, P.A., West Palm Beach, for appellant.

Alan M. Burger and Mary F. April of McDonald Hopkins LLC, West Palm Beach, for appellee.

Nancy G. Abudu, Miami, and Benjamin James Stevenson, Pensacola, for Amici Curiae American Civil Liberties Union of Florida and Legal Scholars.

WARNER, J.

Alkiviades A. David appeals a non-final order denying his motion to dissolve an ex parte injunction prohibiting cyberstalking, obtained by the appellee, John Textor. David, a non-resident, contends that the conduct alleged in Textor's ex parte petition for the injunction does not constitute cyberstalking, and the injunction violates the First Amendment. We agree and reverse.

David and Textor both have companies which produce holograms used in the music industry. In May 2014, shortly before the Billboard Music Awards show, it was announced that Textor's company, Pulse Entertainment, would show a Michael Jackson hologram performance. Immediately thereafter, David's company, Hologram USA, Inc., and others

filed suit for patent infringement against Pulse in the U.S. District Court in Nevada, a suit which continues. Pulse countered by filing a business tort suit against David in California in June 2014, which eventually was dismissed.

In July 2014, Textor filed an ex parte petition for protection pursuant to sections 784.046 and 784.0485, Florida Statutes (2014), which concern cyberstalking. The petition alleged that David was a California resident. Textor alleged that there were no pending suits between the parties, not mentioning the substantial litigation between their companies.

The alleged acts of cyberstalking were (1) a May 2014 text from David to Textor, demanding that Textor give credit to David's company at the Billboard Awards show for the hologram, for which David would drop his patent infringement suit; otherwise, he threatened to increase damages in that suit and stated, "You will be ruined I promise you"; (2) an e-mail from David to business associates (other than Textor) that he had more information about Textor that would be released soon, but not specifying what that information was; (3) an online article from July 2014 on Entrepreneur.com, in which David was quoted as saying that he "would have killed [Textor] if he could"; and (4) articles about Textor that David posted and reposted in various online outlets.

Textor alleges that this is cyberstalking. He alleges fear of violence from David and therefore requested an ex parte injunction prohibiting David from communicating with him or posting anything about him on any websites, as well as ordering David to remove any material posted regarding Textor from his website.

The trial court ordered a hearing on the petition. Before the hearing, Textor amended the petition to allege that David had written another e-mail regarding settlement of the lawsuit in which he threatened to expose photographs, lawsuits by disgruntled employees of Textor, and illicit money transfers if Textor did not end the lawsuit by his company. At the end of the e-mail, David wrote, "I hope for you and your family's sake you are man enough to put an end to this now." David also "tagged" Textor's Instagram account with a photo of Hitler and a caption, "Sorry if I have offended any #neonazis." This tagging allowed any followers of Textor to see the Hitler photo and the caption. Attached to the petition were the e-mails, the Hitler photo, and tweets sent by David referring to various suits involving Textor, including the State of Florida's attempt to recoup the cash it had provided Textor's Florida company, Digital Domain.

2

The trial court granted the amended petition, prohibiting David from communicating with Textor or posting any information about him online, and ordering that he remove any materials he already had posted from the websites.

David then made a limited appearance, without waiving his objection to jurisdiction, and moved to dissolve the ex parte injunction. After a non-evidentiary hearing, the court denied the motion to dissolve and amended its order to prohibit David from communicating with Textor either through electronic means, in person, or through third parties. The amended order also provided:

> Respondent David shall immediately cease and desist from sending any text messages, e[-]mails, posting any tweets (including the re-tweeting or forwarding), posting any images or other forms of communication directed at John Textor without a legitimate purpose. Threats or warnings of physical or emotional harm or attempts to extort Textor or any entity associated with Textor by Respondent David, personally or through his agents, directed to John Textor, directly or by other means, are prohibited.

From this order, David appeals.

David claims that none of the allegations in the petition constitute cyberstalking, but are merely heated rhetoric over a business dispute. Further, he claims that the injunction constitutes a prior restraint on speech, which violates the First Amendment. Whether the conduct alleged constitutes statutorily-defined cyberstalking also resolves the question of whether the petition made sufficient allegations to bring David within the jurisdiction of the court. Because we conclude that the conduct alleged in the petition is not cyberstalking and the injunction violates the First Amendment, we reverse and do not further address the issue of jurisdiction.

Section 784.0485, Florida Statutes (2014), allows an injunction against stalking, including cyberstalking. The statute must be read in conjunction with section 784.046(1)(b), Florida Statutes (2014), which requires at least two incidences of stalking to obtain an injunction. *See Wyandt v. Voccio*, 148 So. 3d 543, 544 (Fla. 2d DCA 2014). Additionally, section 784.048 defines stalking, including cyberstalking:

(a) "Harass" means to engage in a course of conduct **directed at a specific person** which causes substantial emotional distress to that person and serves no legitimate purpose.

(b) "Course of conduct" means a **pattern of conduct composed of a series of acts over a period of time**, however short, which evidences a continuity of purpose. **The term does not include constitutionally protected activity such as picketing or other organized protests**.

. . . .

(d) **"Cyberstalk" means to engage in a course of conduct to communicate**, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, **directed at a specific person**, causing **substantial emotional distress** to that person and **serving no legitimate purpose**.

§ 784.048(1), Fla. Stat. (2014) (emphasis added).

Whether a communication causes substantial emotional distress should be narrowly construed and is governed by the reasonable person standard. *See Bouters v. State*, 659 So. 2d 235, 238 (Fla. 1995); *Goudy v. Duquette*, 112 So. 3d 716, 717 (Fla. 2d DCA 2013). In contrast, whether a communication serves a legitimate purpose is broadly construed and will cover a wide variety of conduct. *See, e.g., Goudy*, 112 So. 3d at 717 (finding that a parent calling about his daughter's dance team participation serves a legitimate purpose); *Alter v. Paquette*, 98 So. 3d 218, 220 (Fla. 2d DCA 2012) (finding that communications demanding payment of loan serve a legitimate purpose); *Touhey v. Seda*, 133 So. 3d 1203, 1205 (Fla. 2d DCA 2014) (finding that communications regarding disputes over the dissolution of a business serve a legitimate purpose). Further, where comments are made on an electronic medium to be read by others, they cannot be said to be directed to a particular person. *See Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So. 3d 1086, 1091-92 (Fla. 3d DCA 2014).

In this case, Textor alleged that two communications came directly from David to him, both of which were demands that Textor drop his lawsuit. In neither of them did David make any threat to Textor's safety. From the full e-mail, David's threats that Textor would be "sorry" if he didn't settle must be taken in the context of the lawsuit and its potential cost to Textor. Because of the existence of the various lawsuits and the heated controversy over the hologram patents, these e-mails had a legitimate

purpose in trying to get Textor to drop what David considered a spurious lawsuit.  Moreover, nothing in the e-mails should have caused substantial emotional distress to Textor, himself a sophisticated businessman.  Indeed, that they did not is reflected in Textor's refusal to settle or adhere to their terms.

The postings online are also not communications which would cause substantial emotional distress.  Most of them are simply retweets of articles or headlines involving Textor.  That they may be embarrassing to Textor is not at all the same as causing him substantial emotional distress sufficient to obtain an injunction.  Moreover, the postings are more like the blog posts in *Chevaldina*, which the Third District found were not directed at a specific person, as they were simply generally criticizing the business involved to the blogging public.  133 So. 3d at 1092.

Even the alleged physical threat made by David in an online interview, that David would have killed Textor if he could have, would not cause a reasonable person substantial emotional distress.  In the online article the author stated that "David joked" when stating that he would have killed Textor.  Spoken to a journalist for publication, it hardly amounts to an actual and credible threat of violence to Textor.

In sum, none of the allegations in Textor's petition show acts constituting cyberstalking, in that a reasonable person[1] would not suffer substantial emotional distress over them.  Those communications made directly to Textor served a legitimate purpose.

An injunction in this case would also violate First Amendment principles.  "[A] temporary injunction directed to speech is a classic example of prior restraint on speech triggering First Amendment concerns." *Vrasic v. Leibel*, 106 So. 3d 485, 486 (Fla. 4th DCA 2013).  An injunction may not be directed to prevent defamatory speech.  *Id.* at 487; *Chevaldina*, 133 So. 3d at 1090.  "'[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.'" *Concerned Citizens for Judicial Fairness, Inc. v. Yacucci*, 162 So. 3d 68, 73 (Fla. 4th DCA 2014) (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)).  Section 784.048 itself recognizes the First Amendment rights of individuals by concluding that a "course of conduct" for purposes of the statute does not include protected speech.

---

[1] The reasonable person standard is applied to a person in the position of the party, in this case an adult businessman.  *See Pallas v. State*, 656 So. 2d 1358, 1363 (Fla. 3d DCA 1994).  Thus, the standard is case specific.

§ 784.048(1)(b), Fla. Stat. (2014). This includes speech that may be offensive or vituperative. *See Watts v. U.S.*, 394 U.S. 705, 708 (1969).

Here, the online postings simply provide information, gleaned from other sources, regarding Textor and the many lawsuits against him. The injunction prevents not only communications *to* Textor, but also communications *about* Textor. Such prohibition by prior restraint violates the Constitution. If David's communications about Textor are defamatory, then Textor can sue David for damages.

For the foregoing reasons, we reverse the temporary injunction and remand with directions to dismiss the petition.

FORST and KLINGENSMITH, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

6