BLACK, Judge.
Randy Scott challenges the order enjoining him from cyberstalking. He contends that the petitioner below, Frederic A. Blum, failed to provide evidence of the statutory elements required for entry of an injunction against cyberstalking. Mr. Scott also contends that the order is overly broad and impedes his First Amendment right to free.speech. We agree that Mr. Blum failed to meet his evidentiary burden and reverse. As a result, we do not reach the First Amendment issue.
Mr. Blum filed a petition for injunction for protection' against cyberstalk-ing. Mr. Blunr-is a process server and a member’ of-the -National Association of Professional Process. Servers (NAPPS). Mr. Scott is a former process server and former member of NAPPS. At the hearing on the petition, Mr-.Blum testified that Mr. Scott sent emails about Mr. Blum and Mr. Blum’s family, partners, and former employees to 2200 NAPPS members. The emails consisted of links to. articles,’ blog posts, or videos. In some instances, the articles or blog posts were written by Mr. Scott. The tenor of the emails, articles, blog posts, and videos was derogatory, and the allegations within'them were potentially damaging to Mr. Blum’s business and reputation. Copies of the email's supported Mr. Blum’s testimony.
Mr. Blum testified that none of the emails were sent directly to him but that he knows about them becausé they were forwarded by the recipients to him or hé received phone calls about them. The emails, articles, blog posts,,and videos did not contain threats against Mr. Blum. However, Mr. Blum claimed that the content of the emails, articles, blog posts, and videos caused him emotional distress; he had trouble sleeping and eating, the emails were constantly on his mind, and he constantly had to defend himself to people.
Mr. Scott testified that his emails discussed many people within NAPPS or connected to NAPPS and were not directed at Mr. Blum.
The trial court granted the injunction without findings or conclusions. The order is a form order with no conditions specific to the facts of this case.[1]
*504 Section 784.0485(1), Florida Statutes (2014), provides that “[fjor the purposes of injunctions for protection against stalking under this section, the offense of stalking shall include the offense of cyber-stalking.” Section 784.048(l)(d) defines cyberstalking as “engaging] in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose.” Harassment is “a course of conduct directed at a specific person which causes substantial emotional distress ... and serves no legitimate purpose.” § 784.048(l)(a). Thus, cyberstalk-ing is harassment via electronic communications. See Murphy v. Reynolds, 55 So.3d 716, 717 (Fla. 1st DCA 2011). In order to succeed in a petition for injunction against cyberstalking, the petitioner must establish that a series of electronic communications directed at the petitioner caused substantial emotional distress and served no legitimate purpose. “Whether a communication causes substantial emotional distress should be narrowly construed and is governed by the reasonable person standard.” David v. Textor, 189 So.3d 871, 875 (Fla. 4th DCA 2016); accord Leach v. Kersey, 162 So.3d 1104, 1106 (Fla. 2d DCA 2015) (“In determining whether substantial emotional distress occurred, the courts look to the standard of a reasonable person in the petitioner’s shoes.”).
“[Wjhere comments are made on an electronic medium to be read by others, they cannot be said to be directed to a particular person.” David, 189 So.3d at 875 (citing Chevaldina v. R.K./FL Mgmt., Inc., 133 So.3d 1086, 1091-92 (Fla. 3d DCA 2014)). In Horowitz v. Horowitz, 160 So.3d 530, 531 (Fla. 2d DCA 2015), this court stated:
Mr. Horowitz’s Facebook posts do not meet the statutory definition of cyber-stalking for two reasons. First, the posts were not “directed at a specific person.” § 784.048(l)(d). The testimony showed that Mr. Horowitz posted the information to his own Facebook page. Screenshots of the posts admitted into evidence confirm that they were posted to Mr. Horowitz’s page and that Mrs. Horowitz was not “tagged” or mentioned, nor were the posts directed to her in any obvious way.
Likewise, the emails here do not meet the statutory definition of cyberstalking. The emails were not “addressed” to Mr. Blum, and nothing indicates that Mr. Blum was an intended recipient. Cf. Branson v. Rodriguez-Linares, 143 So.3d 1070, 1071 (Fla. 2d DCA 2014) (concluding that sending more than 300 emails to the petitioner constituted evidence of stalking); Bacchus v. Bacchus, 108 So.3d 712, 715 (Fla. 5th DCA 2013) (“Even harassment of the wife through third parties would be insufficient to warrant the imposition or extension of an injunction.”).
Mr. Scott did not communicate words, images, or language via email or electronic communication directly to Mr. Blum. Cf. Thoma v. O’Neal, 180 So.3d 1157, 1160 (Fla. 4th DCA 2015) (“We ... agree with the trial court that sending the flyer to the Victim’s home was an incident of harassing behavior.”). The videos do not constitute evidence of the communication of “words, images, or language ... directed at a specific person, causing substantial emotional distress to that person.” See Chevaldina, 133 So.3d at 1091-92 (quoting § 784.048(l)(d)). The emails sent to 2200 NAPPS members do not constitute words “directed at a specific person” for purposes *505 of the cyberstalking statute simply because they are about Mr. Blum. See David, 189 So.3d at 875. Nor did Mr. Scott “cause to be communicated” words, images, or language via email or electronic communication to Mr. Blum.
Further, “[t]hat [the articles and videos] may be embarrassing to [Mr. Blum]’is not at all the same as causing him substantial emotional distress sufficient to obtain an injunction.” See id. The same is true for the emails sent to the NAPPS members. Mr. Scott did not make any threats to Mr. Blum’s safety. See id. ■ Mr. Blum’s distress relates to his business reputation and personal reputation among his colleagues. A reasonable person would not suffer substantial emotional distress over the emails, articles, blog posts, and videos at issue. That the articles written by Mr. Scott contain false allegations or embarrassing information is not a basis for a cyberstalking injunction.
Angry social media postings are now common. Jilted lovers, jilted tenants, and attention-seeking bloggers spew their anger into fiber-optic cables and cyberspace. But analytically, and legally, these rants are essentially the electronic successors of the pre-blog, solo complainant holding a poster on a public sidewalk in front of an auto dealer that proclaimed, “DON’T BUY' HERE! ONLY LEMONS FROM THESE CROOKS!” Existing and prospective customers of the auto dealership considering such a poster made up their minds based on their own' experience and research. If and when a hypothetical complainant with the poster walked into the showroom and harangued individual customers, or threatened violence, however, the previously-protected opinion crossed the border into the land of trespass, business interference, and amenability to tailored injunctive relief. The same well-developed body of law allows the complaining blogger to complain, with liability for money damages for defamation if the complaints are untruthful and satisfy the elements of that cause of action. Injunctive relief to prohibit such complaints is another matter altogether.
Chevaldina, 133 So.,3d at 1092 (addressing an order enjoining tortious interference, stalking, trespass, and defamatory blogs).
Reversed.
NORTHCUTT and SLEET, JJ., Concur.

. When counsel for Mr. Blum inquired as to whether the injunction would require Mr. Scott to remove existing articles, blog posts, and videos, the court responded, "I’m done. I granted’ the petition. That’s all I can say. That’s all I can do.” - When’Mr; Scott then asked, "What can I and can’t I do?” the court *504 responded, “I don’t give legal advice. I just grant or deny petitions. I granted it.”