DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ASHLEY ANN KRAPACS,**
Appellant,

v.

**NISHA E. BACCHUS,**
Appellee.

No. 4D19-641

[August 12, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Stefanie Moon, Judge; L.T. Case No. DVCE19-0341.

Devika L. Carr of D. Carr Law, Coral Springs and Ron Renzy of Wallberg & Renzy, P.A., Coral Springs, for appellant.

Joseph A. DiRuzzo, III of DiRuzzo & Company, Fort Lauderdale, for appellee.

KLINGENSMITH, J.

Appellant, Ashley Krapacs, appeals the trial court's stalking injunction entered against her and in favor of Nisha Bacchus. Because the conduct complained of does not meet the legal requirements for an injunction under Florida Statute Chapter 784, we reverse.

This case initially sprang from Krapacs' own petition for an injunction against her former boyfriend due to domestic violence concerns. Attorney Russel J. Williams represented the former boyfriend before the trial court while Krapacs, also an attorney, represented herself. After her petition was denied, Krapacs wrote an article stating that Williams lied to the judge on the record during these proceedings. As a result, Williams hired attorney Bacchus to sue Krapacs for defamation. Krapacs responded by hiring an attorney and writing several social media posts disparaging Bacchus with personal insults for representing Williams in the defamation suit against her.

Bacchus became particularly concerned after Krapacs posted a meme on Instagram captioned "when opposing counsel tries to use the same

exact trick you saw in your last case." The image showed an adult sticking his head through a pet door, only to face a child pointing a toy gun at him. Additionally, Krapacs created a blog post that included a picture of Bacchus with a hyperlink directing readers to Bacchus's attorney profile on her firm's website. The post claimed Bacchus filed a frivolous lawsuit against Krapacs, accused Bacchus of being a bully, and included a vulgar insult.

As the defamation suit progressed against her, Krapacs continued to tag[1] Bacchus in her posts, hurled various insults at Bacchus and her law firm, and identified the model of the car Bacchus drove. In one of her final Facebook posts, Krapacs stated she was going to connect with Bacchus's former clients to sue her for malpractice in small claims court. Krapacs also tagged Bacchus on several of these posts as well as through other social media platforms. On one occasion, upon learning of the posts, Bacchus stepped out of a meeting and spent the next four hours un-tagging herself from them as Krapacs continued to re-tag her.

Bacchus sought to stop this behavior by filing a petition for an injunction, alleging Krapacs was cyberstalking her as defined by section 784.048(1)(d), Florida Statutes (2018), through her social media posts. The trial court granted a temporary injunction against Krapacs pending a final hearing. At that final hearing, Bacchus described the posts as increasingly aggressive and personal. Bacchus testified that she felt violated, scared, and alarmed when Krapacs referenced the make of her car because she did not know how Krapacs discovered that personal detail. Bacchus also said she felt extremely anxious when she found out Krapacs was attempting to reach her former clients to file bar complaints and malpractice suits against her. Bacchus also stated that because of Krapacs' posts, she had difficulty sleeping, headaches, and severe stomach aches.

After hearing the testimony, the trial court entered a final judgment of injunction for protection against stalking. The judge directed the clerk to narrowly tailor the injunction to balance Krapacs' First Amendment rights with Bacchus's safety. To achieve this goal, the trial court limited Krapacs' use of her office space since both Krapacs and Bacchus had offices in the same building. Under this limitation, Krapacs could only go to her office once a week to retrieve mail and could no longer hold

---

[1] "Tagging" occurs when person A uses person B's username to link their post to person B's account. This makes the post visible to person B's social media contacts and creates a direct hyperlink between person A's post and person B's account.

client meetings in her office. The trial court also prohibited Krapacs from posting on social media about Bacchus regarding private matters that cause both substantial emotional distress and serve no legitimate purpose. Finally, the trial court required Krapacs to take down all the offending posts about Bacchus. From that injunction this appeal followed.

"The standard of review for an order imposing a permanent injunction is abuse of discretion." *Weisberg v. Albert*, 123 So. 3d 663, 664 (Fla. 4th DCA 2013). "But the question of whether the evidence is legally sufficient to justify imposing an injunction is a question of law that we review de novo." *Pickett v. Copeland*, 236 So. 3d 1142, 1144 (Fla. 1st DCA 2018).

"[C]yberstalking is harassment via electronic communications." *Scott v. Blum*, 191 So. 3d 502, 504 (Fla. 2d DCA 2016). Section 784.0485(1), Florida Statutes (2018), defines it as "engag[ing] in a *course of conduct* to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person causing substantial emotional distress to that person and serving no legitimate purpose." § 784.048(1)(d), Fla. Stat. (2018) (emphasis added).

Under section 784.048(1)(b), a "course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose." However, "[t]he term does not include constitutionally protected activity such as picketing or other organized protests." *See id.* In *David v. Schack*, 192 So. 3d 625, 627-28 (Fla. 4th DCA 2016), this court articulated the requirements for an injunction to protect against stalking:

> [T]he petitioner must allege and prove two separate instances of stalking. "Each incident of stalking must be proven by competent, substantial evidence to support an injunction against stalking." When considering the sufficiency of the evidence, "[c]ourts apply a reasonable person standard, not a subjective standard, to determine whether an incident causes substantial emotional distress."

(citations omitted).

Krapacs' actions do not qualify as cyberstalking because they did not constitute a pattern of conduct composed of a series of acts over time evidencing a continuity of purpose. *See* § 784.048(1)(d), Fla. Stat. (2018);

3

*Packal v. Johnson*, 226 So. 3d 337, 338 (Fla. 5th DCA 2017) (finding that multiple acts can "amount to one continuous course of conduct, establishing only one instance of harassment"). Krapacs' act of retagging Bacchus in her social media posts for four hours constitutes one instance of qualifying conduct under the statute. *See Thoma v. O'Neal*, 180 So. 3d 1157, 1160 (Fla. 4th DCA 2015). This conduct, by itself, is akin to an attempt to force unwanted speech upon Bacchus and therefore "'crosses the line' in terms of First Amendment protection." *See id.* However, the other acts Bacchus described are constitutionally protected activities and do not qualify as additional instances of repeated stalking. *See id.*; *Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So. 3d 1086, 1092 (Fla. 3d DCA 2014). Because Krapacs' actions do not qualify as cyberstalking under the statute, we need not address whether Bacchus suffered substantial emotional distress or whether Krapacs' posts served a legitimate purpose and were directed at Bacchus.

Krapacs also argues that the blanket injunction issued by the trial court imposes a "prior restraint" on her First Amendment right to free speech. Like statutes that regulate speech, court-ordered injunctions that regulate speech are also subject to First Amendment scrutiny. *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 757 (1994). "The term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted). "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." *See id.*

The fact that speech may now occur in "cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular," does not mean that governmental regulation of that speech is beyond the reach of First Amendment analysis and scrutiny. *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017) (internal citations omitted) (invalidating a North Carolina statute that prohibited registered sex offenders from accessing commercial social-networking websites); *see also Citizens United v. Fed. Elections Comm'n*, 558 U.S. 310, 326 (2010) (stating that "[c]ourts, too, are bound by the First Amendment [and] [w]e must decline to draw, and then redraw, constitutional lines based on the particular media or technology used").

A case from the Third District, *Chevaldina*, is instructive. 133 So. 3d at 1086. In *Chevaldina*, the Third District considered whether certain internet blog postings constituted "cyberstalking" and were "'incidents of violence,' i.e., stalking, as to justify an injunction pursuant to section

784.046." *Id.* at 1091. The respondent had blogged extensively about the petitioner, and many of the blog posts were "arguably defamatory." *Id.* at 1089. The trial court entered an injunction prohibiting the respondent from making more defamatory blog posts. *Id.* In reversing the lower court's order, the Third District held that the petitioner failed to introduce evidence that the blog posts at issue were being used "to communicate, or to cause to be communicated, words, images, or language . . . directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose." *Id.* at 1091-92 (quoting § 784.048(1)(d), Fla. Stat.).

The Third District noted that an injunction should "never be broader than is necessary to secure to the injured party relief warranted by the circumstances involved in the particular case." *Id.* at 1091 (citing *DeRitis v. AHZ Corp.*, 444 So. 2d 93, 94 (Fla. 4th DCA 1984)). Further, the court stated that the "[e]ntry of an overly broad injunction can constitute a violation of the First Amendment." *Id.* The *Chevaldina* court concluded by stating that:

> Angry social media postings are now common. Jilted lovers, jilted tenants, and attention-seeking bloggers spew their anger into fiber-optic cables and cyberspace. But analytically, and legally, these rants are essentially the electronic successors of the pre-blog, solo complainant holding a poster on a public sidewalk in front of an auto dealer that proclaimed, "DON'T BUY HERE! ONLY LEMONS FROM THESE CROOKS!" Existing and prospective customers of the auto dealership considering such a poster made up their minds based on their own experience and research. If and when a hypothetical complainant with the poster walked into the showroom and harangued individual customers, or threatened violence, however, the previously-protected opinion crossed the border into the land of trespass, business interference, and amenability to tailored injunctive relief. The same well-developed body of law allows the complaining blogger to complain, with liability for money damages for defamation if the complaints are untruthful and satisfy the elements of that cause of action. Injunctive relief to prohibit such complaints is another matter altogether.

*Id.* at 1092. Thus, it remains clear that injunctions are not available to stop someone from uttering insults or falsehoods. *See Vrasic v. Leibel*, 106 So. 3d 485, 486 (Fla. 4th DCA 2013) ("[I]njunctive relief is not available to prohibit the making of defamatory or libelous statements.");

5

*see also Concerned Citizens for Judicial Fairness, Inc. v. Yacucci*, 162 So. 3d 68, 72 (Fla. 4th DCA 2014) (same).

Applying these standards, we consider whether the trial court's order enjoining Krapacs from future posting of messages about Bacchus was an unconstitutional prior restraint on expression covered by the First Amendment. A regulation of speech that "references" Bacchus is necessarily a regulation of the subject matter of that speech. The injunction in this case fully regulates and puts limits on any expression that relates to a particular subject, i.e., Bacchus. As such, we find that the portion of the trial court's order prohibiting Krapacs "from posting Nisha Bacchus, Nisha Elizabeth Bacchus or any part thereof, on any social media or internet websites [and Krapacs] shall take down all social media and internet posts that reference Nisha Bacchus, Nisha Elizabeth Bacchus, or any part thereof immediately" is overbroad. In line with First Amendment principles, this court emphasized that an injunction banning such posts *about* a person instead of *directed at* a person is a prior restraint:

> Additionally, we once again caution trial courts to be hesitant with respect to granting injunctions that restrict First Amendment Speech. In this case, the trial court placed a premade stamp on the final order stating that Appellant "shall not 'post' on the internet regarding" Appellee . . . "Such prohibition by prior restraint violated the Constitution."

*O'Neil v. Goodwin*, 195 So. 3d 411, 414 (Fla. 4th DCA 2016) (citations omitted).

This court reversed a similar injunction in *David v. Textor*, 189 So. 3d 871, 874 (Fla. 4th DCA 2016), that banned an appellant not only from communicating with the alleged victim, Textor, but also from posting Textor's information online or communicating with Textor through third parties. There, this court held that banning someone from posting about someone else on social media was a prior restraint. *Id.* at 876. "The injunction prevents not only communications *to* Textor, but also communications *about* Textor . . . If [appellant's] communications about Textor are defamatory, then Textor can sue [appellant] for damages." *Id.*

Other than the one episode where Krapacs retagged Bacchus for four hours, Krapacs did not cross over any hypothetical lines as described in *Chevaldina*. *See* 133 So. 3d at 1092. For instance, she did not go into Bacchus's office uninvited (a trespass), harangue her existing clients

(business interference), or threaten violence (incitement). *See id.* As the Third District noted, those actions would clearly not be protected and if they occurred could be addressed through injunctive relief. *See id.*

Therefore, we reverse the injunction entered against Krapacs. Even though injunctive relief is not available to Bacchus at this point, Krapacs is not necessarily immune from liability for her actions.[2] If Krapacs' statements and complaints are found to be untruthful and satisfy the necessary elements for defamation, or if her actions constitute an intentional infliction of emotional distress, tortious interference with business relationships, or satisfy the requirements of some other cause of action, Bacchus has an adequate remedy at law: a civil action against Krapacs for money damages. *See Textor,* 189 So. 3d at 874; *Yacucci,* 162 So. 3d at 72; *Vrasic,* 106 So. 3d at 486.

*Reversed.*

GROSS and KUNTZ, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***

---

[2] Indeed, Krapacs has already faced some consequences for her actions. She has been disbarred from the Florida Bar and ordered to pay $4,777.40 in costs. *See Florida Bar v. Krapacs,* SC19-277, 2020 WL 3869584 at \*1 (Fla. July 8, 2020).