898 So.2d 204 (2005)
Charles A. POINDEXTER, II, Appellant,
v.
Carol SPRINGER, Appellee.
No. 2D03-5669.
District Court of Appeal of Florida, Second District.
March 11, 2005.
*205 Charles A. Poindexter, II, pro se.
Curtis N. Flajole of Curtis N. Flajole, P.A., Melbourne, for Appellee.
VILLANTI, Judge.
Charles Poindexter, a prison inmate serving a life sentence for sex offenses against children, challenges the permanent injunction against violence entered to prevent him from contacting Carol Springer, his former private investigator. Although the complained-of correspondence Poindexter sent to Springer was certainly annoying, even creepy, and possibly detrimental to her career, it was not enough to satisfy the requirements for entering a permanent injunction against violence pursuant to section 784.046(2), Florida Statutes (2003). We therefore reverse.
From prison, Poindexter hired Springer to conduct postconviction investigation for him. His mother paid Springer a nonrefundable retainer for her services, and Springer commenced her investigation. When it became apparent to her that she was being asked to contact one of Poindexter's victims, however, Springer removed herself from the case and refunded to Poindexter's mother that part of the "nonrefundable" retainer she had not earned in doing her preliminary investigations. She included an invoice with the refund. Dissatisfied with Springer's work and what he considered her lack of professionalism, Poindexter filed a complaint against Springer with her licensing board. He also filed a small claims suit against her to have the *206 balance of his mother's money refunded. In both endeavors he was unsuccessful. Although not mentioned in Springer's petition for protection against repeat violence, there is some suggestion that Poindexter also sent Springer a "menacing" letter threatening to sue her. Finally, Poindexter sent an envelope to Springer containing "courtesy copies" of three letters he had purportedly sent to local attorneys criticizing the work Springer had done and asking  at least superficially  for advice on what to do. These letters are included in the record on appeal, and there is no dispute they arrived in the same envelope. The trial court found that Poindexter did not write these letters to the attorneys and never actually intended that they be mailed to the attorneys; instead, they were meant to intimidate or harass Springer. It entered an injunction against repeat violence against Poindexter.[1]
An injunction against repeat violence may be entered if, in the six months preceding the filing of the petition, the respondent has committed against the petitioner at least two incidents of violence or stalking. § 784.046(1)(b). Springer did not allege an incident of violence against her; thus, for the injunction to have been valid, Poindexter must have committed at least two acts of stalking against her. The definition of "stalking," found in section 784.048(2), is "willfully, maliciously, and repeatedly follow[ing or] harass [ing] another person." Because Poindexter was incarcerated for life, there was no way he could physically follow Springer; therefore, he must have harassed her to meet the definition of stalking. Turning, then, to the definition of harassment, we note that it means "to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose." § 784.048(1)(a). With regard to "course of conduct," the statute sets forth two principles relevant to this appeal: (1) constitutionally protected activity is not included in "course of conduct"  in other words, harassment cannot be predicated on constitutionally protected activity; and (2) a "series of acts over a period of time" is required to establish a course of conduct. § 784.048(1)(b).[2]
Turning to the acts of harassment that could have supported the injunction against repeat violence, we note that these included (1) the complaint to the licensing board, (2) the small claims suit, (3) the obliquely referenced letter threatening suit, and (4) the envelope containing three letters to attorneys questioning Springer's ethics. Without a doubt, the first two acts are constitutionally protected activity and therefore exempt from the definition of harassment. § 784.048(1)(b); see also Curry v. State, 811 So.2d 736, 741 (Fla. 4th DCA 2002) (determining that a "report to an arm of government, concerning a matter within the purview of the agency's responsibilities" served a legitimate purpose and was a constitutionally protected activity). We must therefore consider the *207 third and fourth acts Poindexter committed.
The trial court made no finding regarding any letter or letters Poindexter sent Springer threatening to sue her. In fact, the only reference to any such correspondence in the transcript of the hearing is Springer's assertion that she asked Poindexter to quit writing to her because his correspondence was becoming more "threatening [and] menacing." The letter was not presented as evidence and is not in our record. Without a record or an adequately developed transcript describing what was contained in the letter, and without a finding by the trial court, there is no way for this court to determine whether, as Springer insists, Poindexter was sending her "threatening, menacing" letters in the literal sense or whether that is simply her interpretation of his threats to sue her. But by Springer's own description, the purpose of the correspondence was to threaten legal redress. A letter promising legal action if Springer did not perform the work Poindexter ordered  commonly known in the legal field as a "demand letter"  served a legitimate purpose and therefore could not be included in the definition of harassment.
This leaves only the envelope of letters that were addressed to the three local attorneys. The trial court specifically found they were written and mailed to Springer intentionally, not to keep her abreast of his legal pursuits, but to harass her. Because the letters contained no legitimate purpose, the only question is whether these letters amounted to a "course of conduct." In a bizarre yet apt analogy, Poindexter compares mailing the three letters in one envelope to the act of throwing one stack of three cakes against a wall in an effort to provoke the ire of one's spouse. Even if the cake-throwing mate bought the three cakes separately, it is the one throw that does the damage. Similarly, even though Poindexter penned three separate letters in the library of the penitentiary, the act of mailing them in one envelope constituted only one act. This one act was insufficient to establish a course of conduct, and therefore there was not a sufficient basis for entering a permanent injunction against repeat violence for stalking. Accordingly, we reverse. Our reversal renders moot Poindexter's argument that the trial court should have granted him a continuance.
Reversed and remanded with instructions to the trial court to enter an order dismissing Springer's petition.
NORTHCUTT and SILBERMAN, JJ., Concur.
NOTES
[1] It should be noted that the trial court correctly found the facts alleged in Springer's petition for injunction against repeat violence insufficient to enter a temporary injunction under section 784.046(6)(a), Florida Statutes (2003). The petition referenced Poindexter's complaint against Springer to her licensing board, his small claims suit against her, and the letter-writing campaign to the local attorneys. Following the hearing on the injunction petition, at which Poindexter appeared telephonically, the trial court entered the permanent injunction against repeat violence.
[2] At least one court has concluded that at least four acts of harassment are required to support an injunction against repeat violence based on stalking. See Dudley v. Smith, 786 So.2d 630, 631 (Fla. 5th DCA 2001).