67 So.3d 235 (2010)
Alexander POLANCO, Appellant,
v.
Odila S. CORDEIRO, Appellee.
No. 2D09-2998.
District Court of Appeal of Florida, Second District.
September 22, 2010.
*236 Jean Marie Henne of Jean M. Henne, P.A., Winter Haven, for Appellant.
No appearance for Appellee.
SILBERMAN, Judge.
Alexander Polanco appeals a final judgment of injunction against repeat violence entered in favor of Odila S. Cordeiro. Because Mrs. Cordeiro failed to prove any acts of violence or stalking, we reverse.
In her petition, Mrs. Cordeiro alleged that Mr. Polanco stalked and harassed her at work and at church. They had been working for Walt Disney World as concierges. She asserted that Mr. Polanco was hostile and "made our lives miserable." After she and a number of coworkers spoke with management, Mr. Polanco was demoted. Mrs. Cordeiro added that Mr. Polanco blamed her, "has been stalking and harassing" her, and stared at her "with a bad look in his eyes." She alleged that at one point he stated, "I will get you back." At her request Walt Disney World transferred her to another location and gave her the name of a company psychologist, whom Mrs. Cordeiro had seen. As to the harassment at church, Mrs. Cordeiro alleged that Mr. Polanco was present while his wife and his sister began yelling at her, cursing her, and belittling her. She told Mr. Polanco "to tell them to have respect for" her and "to stop yelling at" her.
At the hearing on the petition, Mrs. Cordeiro testified that Mr. Polanco harassed and stalked her. She stated that the problems with Mr. Polanco started at work but added that she did not bring a witness from work because the situation was taken care of by her transfer to a different location. Thus, she did not rely on any allegations of harassment at work and did not testify as to any incidents at work.
Mrs. Cordeiro then testified that "last Saturday [Mr. Polanco] was standing in front of my house and he's not allowed to." When asked to explain how he stalked her, she said that Mr. Polanco had been harassing her "through third parties." She stated that Mr. Polanco told someone that he wanted Mrs. Cordeiro's husband to lose control at church and hit Mr. Polanco and then Mr. Polanco would sue the Cordeiros for money. It appears that Mrs. Cordeiro wanted to prevent Mr. Polanco from attending the same church so that her husband would not be provoked to hit Mr. Polanco and then be sued. The parties disputed whether the priest told Mr. Polanco not to return to the church.
The trial judge stated that he would enter the injunction "based upon what I see today." The judge then stated, "Y'all are so emotional about this that if I do not *237 enter this injunction, and you just told me you're going back to that church, there will be a problem." The judge later stated, "Y'all are so emotional and so hostile to each other, there is no way I'm going to let y'all go to the same place." The judge made no other findings at the hearing. In the written order, the trial judge determined that Mrs. Cordeiro was a victim of repeat violence, but he made no additional findings.
The judge's findings that the parties were emotional and hostile toward each other were insufficient to support an injunction against repeat violence as provided for in section 784.046(2), Florida Statutes (2008). The statute defines "repeat violence" as "two incidents of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner or the petitioner's immediate family member." § 784.046(1)(b). A person commits the act of stalking when the person "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person." § 784.048(2). The statute defines "harass" as "to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose." § 784.048(1)(a). A "course of conduct" is a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." § 784.048(1)(b).
In Poindexter v. Springer, 898 So.2d 204, 206 (Fla. 2d DCA 2005), this court stated that because the petitioner had not alleged any acts of violence, for the injunction against repeat violence to be valid the respondent had to have committed at least two acts of stalking against the petitioner. The court considered whether the respondent had harassed the petitioner and determined that mailing three letters in one envelope constituted one act and was insufficient to establish a course of conduct. Id. at 207. Thus, the court concluded that the petitioner had failed to prove a sufficient basis for an injunction against repeat violence based on stalking. Id.
Here, Mrs. Cordeiro abandoned her allegations regarding harassment at work. Regarding the church incident, we agree with Mr. Polanco that his failure to stop third parties from yelling at Mrs. Cordeiro and his failure to make them have respect for her are not acts of violence, stalking, or harassment within the statutory definition. Furthermore, a single incident would not support a finding of harassment which requires a course of conduct comprised of a series of acts. See § 784.048(1)(a), (b); Poindexter, 898 So.2d at 207. That Mr. Polanco allegedly stood one time in front of Mrs. Cordeiro's house also does not support entry of the injunction. This act, taken together with the rest of the evidence, simply does not demonstrate that Mr. Polanco engaged in a pattern of conduct demonstrating a continuity of purpose that would constitute harassment.
Because Mrs. Cordeiro failed to establish that she was entitled to an injunction for protection against repeat violence, we reverse the final judgment and remand for the trial court to dismiss the petition. See Poindexter, 898 So.2d at 207.
Reversed and remanded.
CASANUEVA, C.J., Concurs.
VILLANTI, J., Concurs with opinion.
VILLANTI, Judge, Concurring.
I fully concur in this opinion but write to emphasize that this petition should never have been filed to begin with. The petition was filed because Mrs. Cordeiro claims she was "advised" to do so by "the police" when she called them to report her *238 problems with Mr. Polanco. The record does not reflect the actual contents of this phone call, and we only have Mrs. Cordeiro's sworn petition in support of this allegation, but if true, this "advice" was clearly improper. Rather, the police should have told Mrs. Cordeiro that this was a civil dispute and that she should consult an attorney. Having not received this advice, Mrs. Cordeiro proceeded pro se and, based upon her allegations, I seriously doubt she ever sought the advice of counsel.
Petitions for injunctions against repeat violence, or against domestic violence for that matter, are to be used only to rectify the egregious conduct outlined in the statutes themselves. See §§ 741.30, 784.046, Fla. Stat. (2009) (domestic violence and repeat violence respectively). These statutory provisions are not a panacea to be used to cure all social ills. In fact, nowhere in the statutory catalog of improper behavior is there a provision for court-ordered relief against uncivil behavior occurring at work or church, which was the crux of Mrs. Cordeiro's complaint. See Gagnard v. Sticht, 886 So.2d 321, 322 (Fla. 4th DCA 2004) (noting that argumentative behavior that was extremely uncivil and threatening "fell short" of meeting the legal requirements of section 784.046).
Unfortunately, the current version of section 784.046 does not seem to permit the trial court to simply dismiss a sworn petition that does not allege facts that fall within the statutory language. Instead, section 784.046(5) requires that "[u]pon the filing of the petition, the court shall set a hearing to be held at the earliest possible time." (Emphasis added.) The result is the use of scant judicial resources to conduct unnecessary hearings based on pleadings that could never support the issuance of an injunction. These same hearings often serve only to inflame the parties' emotions and foster further uncivil behavior. I would encourage the legislature to consider amending the domestic violence and repeat violence statutes to allow judges to dismiss petitions that, on their face, do not contain allegations sufficient to meet the statutory requirements without prejudice to the petitioner refiling a legally sufficient petition if he or she can do so.[1]
Further, nowhere in section 784.046 is there any provision for an award of sanctions against a petitioner who uses the statutory provisions concerning injunctions as a sword rather than a shield.[2] While the lack of statutory sanctions may be a justifiable public policy, if abuses of the injunction process are to be curbed, then a petitioner who knowingly misuses or abuses "the system" should be ordered to pay any attorney fees incurred by the respondent when successfully challenging the petition.
NOTES
[1] As it is currently worded, the repeat violence statute would require a full evidentiary hearing before a circuit court judge even if the petitioner simply signed his or her name to a blank form petition and filed it. In no other context does the law provide for an evidentiary hearing on the substance of a party's claim in the absence of legally sufficient allegations. While I recognize that many respondents in this type of proceeding are not model citizens, they nevertheless have a due process right to notice of the alleged improper conduct that requires them to appear before the court. Hence, I am in favor of a modest statutory revision that would vest appropriate discretion in our trial judges to prevent wholly unnecessary hearings.
[2] I recognize that in certain instances, the trial court may be able to impose sanctions for abuses of the system either on its own motion under section 57.105(1), Florida Statutes (2009), see Bierlin v. Lucibella, 955 So.2d 1206, 1208 (Fla. 4th DCA 2007), or pursuant to its inherent authority.