DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOSEPH LAWRENCE O'NEILL,**
Appellant,

v.

**SARA SKYE GOODWIN,**
Appellee.

No. 4D15-2055

[June 29, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Timothy Bailey, Judge; L.T. Case No. DVCE 15-1898.

Joseph Lawrence O'Neill, Pompano Beach, pro se.

No appearance for appellee.

FORST, J.

Appellant Joseph O'Neill appeals the entry of a permanent injunction against stalking entered against him after he was accused of stalking Appellee Sara Goodwin. Because we agree with Appellant's argument on appeal that he had a legitimate reason for contacting Appellee, we reverse the entry of the injunction.

## Background

Appellant met Appellee three years prior to the allegations at issue. Appellee briefly worked with Appellant until she began to believe he was romantically interested in her. At that point, Appellee informed Appellant she wanted no further contact with him. Appellant complied and two years passed without contact between the parties.

During this two-year period, Appellant attended film school and began to make a documentary exploring subcultures on social media. This documentary prominently featured Appellee and made use of photographs she had posted on her Instagram page. Although Appellee had previously blocked Appellant from viewing her Instagram profile, she admitted that she had accepted anonymous friend requests that allowed these unnamed

persons access to her photos.

Appellant testified that he was worried about the possible negative effects this documentary might have for Appellee, and that he was particularly concerned about violent reactions by Appellee's boyfriend, who was also portrayed in a negative light in the film. Accordingly, Appellant visited Appellee's home to inform her of the pending film. Appellee did not challenge Appellant's contention that this was the purpose of his visit and acknowledged that Appellant had never been violent towards her or threatened her. Nevertheless, Appellee informed Appellant that she would call the police if Appellant did not leave her home. Appellant left without fully explaining the purpose of his visit.

A "few days to a few weeks later," Appellee received a text message from Appellant again seeking to inform her about the upcoming documentary. Appellee found the documentary online and became upset about the contents thereof, which she felt unfairly portrayed her and her friends. Appellee also learned that Appellant had visited her friends in Jacksonville to discuss the film with them. After the one exchange of text messages between the parties, there was no further communication between them.

Appellee subsequently filed a petition for an injunction for protection against stalking, alleging that Appellant had "threatened to harm" her or her family members, and "cyber stalked" her Instagram account and "stole pictures" she had posted. Appellee claimed she was "very afraid about what he might do next."

After an evidentiary hearing, the trial court granted the motion for permanent injunction. A Final Judgment of Injunction for Protection Against Stalking was entered against Appellant, permanently barring him from contacting Appellee, posting on the internet regarding her, possessing a firearm, or defacing/destroying Appellee's personal property. This appeal follows.

## Analysis

"A trial court's order granting a permanent injunction is reviewed for competent substantial evidence." *Thoma v. O'Neal,* 180 So. 3d 1157, 1159 (Fla. 4th DCA 2015).

Courts have the authority to enjoin stalking and/or cyberstalking under section 784.0485, Florida Statutes (2015). "A person who willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person commits the offense of stalking . . . ." § 784.048(2), Fla. Stat (2015).

"'Harass' means to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." § 784.048(1)(a). Appellant is only challenging the finding by the court that the contact at issue served no legitimate purpose.

Whether the purpose for contact is "legitimate" is evaluated on a case-by-case basis and the term "legitimate" seems to be lacking a precise definition. However, courts have generally held that contact is legitimate when there is a reason for the contact other than to harass the victim. For example, in *Alter v. Paquette*, 98 So. 3d 218 (Fla. 2d DCA 2012), the Second District Court of Appeal held that seven text messages seeking the repayment of a loan were insufficient to support a finding of stalking as "it cannot be said that the text messages served 'no legitimate purpose.'" *Id.* at 220.

In *Poindexter v. Springer*, 898 So. 2d 204 (Fla. 2d DCA 2005), an inmate hired a private investigator to aid in his quest for post-conviction relief. *Id.* at 205. The investigator was unwilling to do the exact work sought by the inmate, so she resigned and returned the portion of his deposit she had not earned in her preliminary investigation. *Id.* The inmate responded by complaining to the investigator's licensing board, filing a suit in court, threatening to send letters to area attorneys complaining about the investigator's work, and sent a letter to the investigator threatening to sue her if she did not continue the requested work. *Id.* at 205-06. The Second District Court of Appeal held that the letter threatening to sue "served a legitimate purpose and therefore could not be included in the definition of harassment." *Id.* at 207.

In another Second District Court of Appeal case, *Goudy v. Duquette*, 112 So. 3d 716 (Fla. 2d DCA 2013), a parent called a dance instructor to discuss his dissatisfaction with the instructor's decisions regarding his daughter's participation on the dance team. *Id.* at 717. The court held that "this was a legitimate purpose." *Id.* Similarly, the parent's appearance "at the dance team competition location, the team's hotel, and a nearby restaurant" all served legitimate purposes. *Id.*

The Second District Court of Appeal also has held that phone calls, messages, and "friend" requests on Facebook were not grounds for an injunction against stalking when made "for the legitimate purpose" of telling the petitioner to stay away from the defendant's husband, with whom the petitioner had been having an affair, and when each contact by the defendant was in response to an attempt by the petitioner to talk to the husband. *Leach v. Kersey,* 162 So. 3d 1104, 1106 (Fla. 2d DCA 2015).

In this case, both Appellant and Appellee agree the purpose of Appellant's communication with Appellee was to inform her of the pending documentary. While the creation of this documentary certainly appears to be unwelcome, alerting Appellee to its existence was a legitimate reason for contact. There was no competent substantial evidence to support the trial court's finding that it was not. Therefore, we are compelled to reverse the entry of the injunction.

Additionally, we once again caution trial courts to be hesitant with respect to granting injunctions that restrict protected First Amendment speech. In this case, the trial court placed a premade stamp on the final order stating that Appellant "shall not 'post' on the internet regarding" Appellee. As seen in *David v. Textor*, 41 Fla. L. Weekly D131 (Fla. 4th DCA Jan. 6, 2016), and *Neptune v. Lanoue*, 178 So. 3d 520 (Fla. 4th DCA 2015), such a restriction "prevents not only communications *to* [the petitioner], but also communications *about* [the petitioner]." *David*, 41 Fla. L. Weekly at D132. "Such prohibition by prior restraint violates the Constitution." *Id.*

## Conclusion

There is insufficient support for the trial court's finding that Appellant had no legitimate purpose for contacting Appellee; the injunction in this case is therefore reversed. We also encourage trial courts to more carefully craft injunctions so as to balance the need for protection for petitioners with the constitutional rights of defendants. *See Neptune*, 178 So. 3d at 522-23 (holding that an injunction that "paints with unduly broad strokes on a very large canvas and goes far beyond [the purpose of the injunction] . . . must be reformulated and narrowly tailored in order to more properly balance the desire to protect the [victim] from harassment and stalking with the need to safeguard Appellant's First Amendment rights.").

*Reversed.*

WARNER, J., concurs.
CONNER, J., dissents with opinion.

CONNER, J., dissenting.

I respectfully dissent. The majority concludes that the evidence was insufficient to prove the grounds for an injunction. There are additional facts not mentioned in the majority opinion, which the majority does not feel are pertinent to the issue of whether the appellant's conduct was

4

sufficient to constitute stalking behavior justifying an injunction as provided by the statutes. I contend those facts are material, and the evidence proves, if not directly, then at least circumstantially, that the appellant's behavior justifies an injunction. However, I do agree with the majority that some of the injunction prohibitions are overly broad and violate the appellant's First Amendment right. Thus, I would affirm the entry of an injunction, but reverse and remand for the trial court to impose an injunction that does not unduly infringe on the appellant's First Amendment rights.

*     *     *

**_Not final until disposition of timely filed motion for rehearing._**