**Allan CARTER, Appellant,**

v.

**Jeffrey MALKEN, Appellee.**

**No. 4D16–21**

District Court of Appeal of Florida,
Fourth District.

[January 4, 2017]

Amy D. Shield of Amy D. Shield, P.A., Boca Raton, for appellant.

No brief filed on behalf of appellee.

May, J.

It takes two incidents of harassment to satisfy the requirements for an injunction against stalking. The respondent appeals an injunction entered against him. He argues the court erred in entering the injunction because the petitioner failed to prove at least two incidents of harassment. We agree and reverse.

A dispute over a will and the disposition of property lies at the heart of this litigation. The decedent's son ["petitioner"] petitioned for an injunction for protection against stalking against his sister's significant other ["respondent"]. The petition alleged that: (1) on October 4, 2015, the petitioner's sister and the respondent broke into a house, previously owned by the petitioner's mother, and took valuables without permission; and (2) on October 5, 2015, the respondent threatened to kill him, grabbed and pushed him. The trial court entered a temporary injunction for protection against stalking against the respondent, and set the matter for a hearing on the permanent injunction.

The petitioner claimed the mother's house had been quitclaimed to him in 2002. But, the record evidence of the quitclaim deed and history from the Broward County Property Appraiser's Office established that the house was quitclaimed to the petitioner two months prior to the mother's death in 2015.

The respondent testified that he thought the house belonged to the sister when they went to the house on October 4, 2015. The sister had access to the home, still had personal belongings there, and believed their mother still owned the home. In fact, the petitioner acknowledged his sister had no idea the house had been quitclaimed to him. The petitioner was **not** present at the mother's house on October 4th.

The next day, an altercation occurred between the petitioner and his sister while at the house for their mother's funeral service. The petitioner testified that his sister became angry when discussing the ownership of the house. He alleged that she kicked him in the groin and scratched him in the face.

The police were called, and the sister was arrested for unlawfully striking the petitioner. Yet, at the hearing, the petitioner testified that the respondent punched him and threatened to kill him on October 5th. But, the probable cause affidavit for the sister's arrest never mentioned the respondent.

The respondent testified that he was in the room with his own sister, the petitioner's wife, and the petitioner's sister when the argument occurred. The respondent said he was attacked by the petitioner, who came storming into the room and scratched his arm, bloodying his shirt. A picture showed a bruise on his arm.

The petitioner also testified that the respondent contacted him to retrieve the sister's possessions while there was a restraining order against his sister. He arrived at the house with a police officer pursuant to a court order. The meeting was pre-arranged between the police and the petitioner. The respondent did not speak to the petitioner on this occasion.

Since the October 5th incident, the petitioner testified that his sister and the respondent called him three times, explaining they had accidentally pocket-called him from his sister's cell phone. He could hear the respondent talking in the background.

The court granted the petition, stating that all three statutory requirements for an injunction were met. The respondent argued that the petitioner had failed to prove multiple incidents of harassment. The only proof of contact between him and the petitioner was conflicting evidence on what happened on October 5th. The court

responded: "All you need is repeated, unwanted, malicious, more than once. It wasn't wanted, and it was mean-spirited. It was not friendly. That's stalking. That's the definition. The gentleman met his burden of proof."

The court entered a final judgment of injunction for protection against stalking. The respondent moved for rehearing, which the trial court denied. The respondent now appeals the injunction and order denying his motion for rehearing.

The respondent maintains the trial court erroneously entered the injunction because the petitioner failed to establish the statutory requirement of two incidents of harassment.

■ We review a trial court's order granting a permanent injunction for competent substantial evidence. *O'Neill v. Goodwin*, 195 So.3d 411, 413 (Fla. 4th DCA 2016).

To find stalking, there must be "willful, malicious, and repeated following, harassing, or cyberstalking of another person." § 784.048(2), Fla. Stat. (2015). " 'Harass' means to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." § 784.048(1)(a). "[C]ourts have generally held that contact is legitimate when there is a reason for the contact other than to harass the victim." *O'Neill*, 195 So.3d at 413.

■ By its statutory definition, stalking requires proof of repeated acts. *Laserinko v. Gerhardt*, 154 So.3d 520, 521 (Fla. 5th DCA 2015). "In determining whether substantial emotional distress has been established, 'courts use a reasonable person standard, not a subjective one.' " *Id.* (citation omitted).

Here, the petitioner failed to prove repeated acts of harassment. Although his petition alleged two incidents of stalking, four incidents were discussed at the hearing: the respondent (1) went to the house on October 4th to obtain a copy of the mother's will; (2) had an altercation with the petitioner at the house on October 5th; (3) came to the house *with police* pursuant to a court order to pick up the sister's possessions; and (4) made accidental "pocket dialed" phone calls. These events are legally insufficient to support a finding of stalking.

In the first incident on October 4th, the petitioner alleged the respondent broke into the house with petitioner's sister, but the evidence established that neither of them knew the house belonged to the petitioner. And, the petitioner was not even present on that date. Simply put, the visit lacked the willful and malicious intent to cause the petitioner substantial emotional distress.

Even the October 5th altercation failed to meet the definition of stalking. The petitioner testified at the hearing that the respondent pushed, punched, and threatened to kill him. Yet, the petitioner never mentioned those facts or the respondent to the police when they came to the house and arrested the sister on that day.

The third alleged incident occurred when the respondent went to the house with law enforcement and a court order to get the sister's property. The visit had been pre-arranged between the petitioner and the police, and the respondent never spoke to the petitioner. No reasonable person would interpret this event as malicious or harassing.

The fourth and final incident was the receipt of accidental, "pocket-dialed" phone calls from his sister, in which the respondent could be heard in the background. Under a "reasonable person" standard, this too was insufficient to cause "substan-tial emotional distress" to support a finding of stalking. The calls cannot be deemed "willful or malicious" as § 784.048(2) requires. *See Slack v. Kling*, 959 So.2d 425, 426 (Fla. 2d DCA 2007) (reversing an injunction because two voicemails were insufficient for a reasonable person to suffer substantial emotional distress).

The evidence was simply lacking. The petitioner failed to prove the requisite multiple incidents of harassment to justify the injunction. Even if the October 5th incident occurred as the petitioner testified, the single incident does not satisfy as proof of repeated acts. A minimum of two incidents of harassment are required to establish stalking. *Wyandt v. Voccio*, 148 So.3d 543, 544 (Fla. 2d DCA 2014).

The injunction is reversed.

*Reversed.*

Ciklin, C.J., and Kuntz, J., concur.