DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**NISSIM HASAN** a/k/a **NISSIM HASSAN,**
Appellant,

v.

**KIMBERLY P. RIVERA,**
Appellee.

No. 4D20-1598

[January 12, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael G. Kaplan, Judge; L.T. Case No. DVCE20-1529.

Daniel A. Bushell of Bushell Law, P.A., Fort Lauderdale, for appellant.

Marc A. Silverman of Frank, Weinberg & Black, P.L., Plantation, for appellee.

PER CURIAM.

We reverse the final judgment of injunction for protection against stalking issued pursuant to section 784.0485(1), Florida Statutes (2020), concluding that appellant's repeated threats of litigation did not rise to the level of causing substantial emotional distress in a reasonable person.

The evidence presented concerned appellant's displeasure with a woman's testimony in another person's injunction case. On one occasion appellant came to the woman's front door and angrily threatened to sue her for $50,000 for lying unless she helped him in his ongoing dispute with another person; two other times appellant approached the woman in Publix and angrily threatened to sue her unless she backed his position in a dispute with a condominium association.

These incidents, which were the basis for appellee's petition, do not meet the level of conduct required to support an injunction for stalking.[1]

---

[1] Even considering the evidence of unpleaded incidents (most of which appellant did not object to below), we conclude that the unpleaded incidents likewise did not rise to the level necessary to support an injunction for stalking.

Unpleasant, uncivil, and distasteful communications "do not rise to the level required to support a permanent injunction against stalking." *Reid v. Saunders*, 282 So. 3d 151, 151 (Fla. 1st DCA 2019). Likewise, "[m]ere irritation, annoyance, embarrassment, exasperation, aggravation, and frustration, without more, does not equate to 'substantial emotional distress.'" *Cash v. Gagnon*, 306 So. 3d 106, 110 (Fla. 4th DCA 2020) (quoting *Johnstone v. State*, 298 So. 3d 660, 669 (Fla. 4th DCA 2020) (Klingensmith, J., dissenting)). While profanity and accusations of lying might be offensive or even defamatory, "this speech does not fall within a 'course of conduct' that allows for injunctive relief." *Id.* Similarly, where the respondent's actions would not have caused substantial emotional distress in a reasonable person, an injunction cannot be supported by conclusory testimony that the petitioner was scared of the respondent's "erratic behavior." *Gonzalez v. Funes*, 300 So. 3d 679, 684–85 (Fla. 4th DCA 2020). In short, "injunctions are not available to stop someone from uttering insults or falsehoods." *Logue v. Book*, 297 So. 3d 605, 614 (Fla. 4th DCA 2020).

We reverse the final judgment for injunction of protection and remand to the circuit court to dismiss the petition.

*Reversed and remanded.*

GROSS and KUNTZ, JJ., concur.
FORST, J., dissents with opinion.

FORST, J., dissenting.

"Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein." Art. I, § 23, Fla. Const. Florida's anti-stalking law, section 784.0485, Florida Statutes (2020), "create[s] a cause of action for an injunction for protection against stalking" by a nongovernmental actor. Thus, the Florida Constitution protects an individual's "right to be let alone" from the government and section 748.0485 extends somewhat similar protection against harassment by a nongovernmental actor. As Appellant significantly infringed upon the victim's freedom, I respectfully dissent from the majority's opinion.

In the instant case, Appellant was no stranger to the anti-stalking injunction process. The victim had been an employee of a condominium association; both Appellant and the victim were residents of the condominium. During the victim's employment, Appellant "often came to the offices" and "was threatening and scaring people." This led to the

2

association president seeking and obtaining a protective injunction against Appellant. The victim left her employment with the association in September 2018.

One month later, Appellant went to the victim's home and threatened to sue her unless she recanted the statements she had given in the hearing on the petition for injunction filed by the association's president. The victim "asked [Appellant] to leave me alone, to never come to my home, and to not - - that I didn't want any part of it." She further testified that after she had entered her home and closed the door, Appellant "kept at it [and] kept talking and he kept saying that we were - - that he was going to make me pay."

The second unwelcome encounter was about eight months later, at a local supermarket. The victim testified that Appellant "came right up to my face and said that he was going to make me pay . . . that his attorney was going to sue me for $50,000, and that he was - - unless I testified and helped him bring [the condo association's president] down for stealing money from the association, . . . that we were all going to pay . . . ." The victim contends she told Appellant that "I was not feeling comfortable that he'd approached me with my son, and that I'm tired of him - - his aggressive behavior - - and *I wanted him to leave me alone and to not approach me, not to come towards me.*" (Emphasis added). And the victim "pushed through [Appellant] to leave . . . ."

At this point, Appellant was clearly on notice that the victim had no desire to discuss either Appellant's past lawsuit or his threatened lawsuit and merely wanted to be left alone, both when she was at home and when she was out in public. Nonetheless, several months after the first supermarket encounter, Appellant noticed the victim at the same supermarket. Notwithstanding the victim's previous declarations, Appellant once again invaded the victim's personal space, "with his hysterical outbursts, aggressive way saying . . . he was going to sue me for the 50,000 unless I helped him bring [the association's president] down." The victim for a third time informed Appellant that she didn't want to be involved with his dispute with her former employer and "I want you to stop. I'm with my kid." The victim maintains *Appellant did not stop*, but "just carrie[d] on talking and telling me that he's going to make us pay," and she ultimately had to "push through him [to] then leave."

A trial court's order granting a permanent injunction for protection against stalking is reviewed for competent substantial evidence. *O'Neill v. Goodwin,* 195 So. 3d 411, 413 (Fla. 4th DCA 2016).

3

Courts have the authority to enjoin stalking and/or cyberstalking under section 784.0485, Florida Statutes (2015). "A person who willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person commits the offense of stalking ...." § 784.048(2), Fla. Stat (2015). "'Harass' means to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." § 784.048(1)(a).

*Id.*

### A. Appellant's course of conduct caused substantial emotional distress to the victim

"'For determining whether an incident [causes] substantial emotional distress, courts must use a reasonable person standard, not a subjective standard.' Thus, the question is not 'was the victim in tears and terrified,' but rather, 'would a reasonable person be put in distress when subjected to such conduct?'" *Gonzalez v. Funes*, 300 So. 3d 679, 684 (Fla. 4th DCA 2020) (alteration in original) (internal citations omitted) (quoting *McMath v. Biernacki*, 776 So. 2d 1039, 1040 (Fla. 1st DCA 2001), and *D.L.D. v. State*, 815 So. 2d 746, 748 (Fla. 5th DCA 2002)).

During the hearing on the victim's petition for injunction, she referenced "[m]ultiple times" that Appellant had come to the condominium association office where she was then employed and behaved "aggressively" and "attacked" and physically struck the association's president. She testified that the three subsequent non-workplace encounters were similar to her "experiences in the past with [Appellant] and his behavior has always been unpredictable [and] aggressive." The victim contended that, as a result of these encounters—one at her home and two at her local grocer—as well as Appellant's previous declarations that "he is a military expert and that he knows how to do away with people," she "feel[s] like I'm still being harassed and stalked . . . [and] now he's bringing it to my home, to - - when I'm shopping. And I don't feel safe anymore. And I don't - - I don't feel comfortable."

The victim further testified that, after she walked away from Appellant during the first supermarket confrontation, "I seen him like look outside the glass window of Publix. And I felt like he was watching my vehicle. And I just sat at the car and I was afraid to move." She recounted that, "for a few weeks after, I kept watching my car. And every time before I got in my car, I was watching around my car . . . ." Following the second

Publix encounter, the victim did not "feel safe at that Publix anymore. I don't want to shop there because I - - fear I will run into him."

Here, the victim's testimony regarding Appellant's aggressive behavior toward the victim, as detailed above, which the trial court found to be credible, presented competent substantial evidence that Appellant's course of conduct directed at the victim "cause[d] substantial emotional distress to that person." *See* § 784.048(1)(a), Fla. Stat. (2020). This conclusion is buttressed by considering the victim's knowledge of Appellant's previous encounters with the condominium president for which an injunction against stalking was issued.

### B. *Appellant's course of conduct directed at the victim served no legitimate purpose*

"Whether the purpose for contact is 'legitimate' is evaluated on a case-by-case basis and the term 'legitimate' seems to be lacking a precise definition. However, courts have generally held that contact is legitimate when there is a reason for the contact other than to harass the victim." *O'Neill*, 195 So. 3d at 413. Here, the initial meeting/confrontation at the victim's home may have served a "legitimate purpose," as Appellant wanted the victim to understand his dispute with the condominium association and its president and his desire that the victim support his efforts.

However, any legitimacy eroded after the victim made her position on this matter clear and urged Appellant to leave her alone. He did not, twice hostilely approaching the victim at the supermarket thereafter, both times forcing the victim to flee once Appellant rejected the victim's request that he physically back away. The fact that the contact with the victim was—in each instance—physical, confrontational, and uninvited, detracts from its legitimacy. *Cf. Alter v. Paquette*, 98 So. 3d 218, 220 (Fla. 2d DCA 2012) (seven text messages were insufficient to support a finding of stalking); *Poindexter v. Springer*, 898 So. 2d 204, 207 (Fla. 2d DCA 2005) (holding that a letter threatening to sue "served a legitimate purpose and therefore could not be included in the definition of harassment").

### Conclusion

As in *Auguste v. Aguado*, 282 So. 3d 937 (Fla. 3d DCA 2019), "[t]his case was highly fact-specific and relied in large part on live testimony. As such, the trial court was uniquely well-situated to evaluate the evidence and rule on the injunction." *Id.* at 938. "A 'trial court is afforded broad discretion in granting, denying, dissolving or modifying injunctions, and unless a clear abuse of discretion is demonstrated, an appellate court

5

must not disturb the trial court's decision.'" *Singer v. Singer*, 324 So. 3d 529, 529 (Fla. 4th DCA 2021) (quoting *Carricarte v. Carricarte*, 961 So. 2d 1019, 1020 (Fla. 3d DCA 2007)).

It was not the content or the frequency of Appellant's communications that crossed the line. It was the aggressive and "in your face" presentation of his threats and his refusal to back away and cease *physically* confronting the victim that leapfrogs these communications from "pestering" to "stalking/harassment." Accordingly, I would affirm the trial court's final judgment of injunction for protection against stalking.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***