DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHARLES ROSALY**,
Appellant,

v.

**VERONIKA KONECNY,**
Appellee.

No. 4D21-3236

[August 31, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dale Cohen, Judge; L.T. Case No. DVCE21004118.

Charles Lee Rosaly, Tamarac, pro se.

No brief filed for appellee.

GROSS, J.

Charles Rosaly appeals a final judgment for protection against stalking. We affirm the final judgment in all respects but one. We reverse that portion of the final judgment providing that Rosaly "shall not have any contact" with his three minor children and that appellee "shall have 100% sole time-sharing with all minor children."

The final judgment was entered after an evidentiary hearing, which Rosaly did not attend.

On appeal, Rosaly contends that the evidence at the hearing did not support the entry of the injunction for protection against stalking.

"When evaluating whether competent, substantial evidence supports a trial court's ruling, '[l]egal sufficiency . . . as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal.'" *Stone v. Stone*, 128 So. 3d 239, 240 (Fla. 4th DCA 2013) (quoting *Brilhart v. Brilhart ex rel. S.L.B.,* 116 So. 3d 617, 619 (Fla. 2d DCA 2013)). "Whether the evidence is legally sufficient to support issuance of the injunction is a legal question subject to de novo review." *Brungart v. Pullen*, 296 So. 3d 973, 976 (Fla.

2d DCA 2020) (quoting *Schultz v. Moore*, 282 So. 3d 152, 154 (Fla. 5th DCA 2019)).

Section 784.0485(1), Florida Statutes (2021), creates "a cause of action for an injunction for protection against stalking." A person commits stalking when the person "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person." § 784.048(2), Fla. Stat. (2021).

"Harass" means "to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." § 784.048(1)(a), Fla. Stat. (2021). "Course of conduct," in turn, means "a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose." § 784.048(1)(b), Fla. Stat. (2021).

"[B]y its statutory definition, stalking requires proof of repeated acts." *Lukacs v. Luton*, 982 So. 2d 1217, 1219 (Fla. 1st DCA 2008). "It takes two incidents of harassment to satisfy the requirements for an injunction against stalking." *Carter v. Malken*, 207 So. 3d 891, 892 (Fla. 4th DCA 2017).

A finding of harassment requires a showing of "substantial emotional distress." § 784.048(1)(a), Fla. Stat. (2021). "Whether a communication causes substantial emotional distress should be narrowly construed and is governed by the reasonable person standard." *David v. Textor*, 189 So. 3d 871, 875 (Fla. 4th DCA 2016). Substantial emotional distress "is greater than just an ordinary feeling of distress." *Johnstone v. State*, 298 So. 3d 660, 665 (Fla. 4th DCA 2020).

Unpleasant, uncivil, and distasteful communications "do not rise to the level required to support a permanent injunction against stalking." *Reid v. Saunders*, 282 So. 3d 151, 151 (Fla. 1st DCA 2019). Likewise, "[m]ere irritation, annoyance, embarrassment, exasperation, aggravation, and frustration, without more, does not equate to 'substantial emotional distress.'" *Cash v. Gagnon*, 306 So. 3d 106, 110 (Fla. 4th DCA 2020) (citation omitted). While profanity and accusations of lying might be offensive or even defamatory, "this speech does not fall within a 'course of conduct' that allows for injunctive relief." *Id.* Similarly, testimony that a petitioner was scared of the respondent's "erratic behavior" was held to be insufficient to establish substantial emotional distress. *Gonzalez v. Funes*, 300 So. 3d 679, 684–85 (Fla. 4th DCA 2020). In short, "injunctions are not available to stop someone from uttering insults or falsehoods." *Logue v. Book*, 297 So. 3d 605, 614 (Fla. 4th DCA 2020).

2

By contrast, where the complained-of conduct is more extreme and outrageous, courts have found the conduct to be sufficient to cause substantial emotional distress in a reasonable person. *See Robertson v. Robertson*, 164 So. 3d 87, 88 (Fla. 4th DCA 2015) (holding that where an ex-husband went to his ex-wife's home "in the middle of the night" and "looked inside her darkened windows with a flashlight" "for three consecutive nights," the ex-husband's actions were sufficient to cause substantial emotional distress in a reasonable person); *Auguste v. Aguado*, 282 So. 3d 937, 937–38 (Fla. 3d DCA 2019).

Another required element of harassment is that the course of conduct "serves no legitimate purpose." § 784.048(1)(a), Fla. Stat. (2021). "[W]hether a communication serves a legitimate purpose is broadly construed and will cover a wide variety of conduct." *David*, 189 So. 3d at 875.

"Whether the purpose for contact is 'legitimate' is evaluated on a case-by-case basis." *O'Neill v. Goodwin*, 195 So. 3d 411, 413 (Fla. 4th DCA 2016). "However, courts have generally held that contact is legitimate when there is a reason for the contact other than to harass the victim." *Id.*

The evidence at the hearing was that Rosaly was in the practice of driving by appellee's residence multiple times a day. During one of these drive-bys, Rosaly leaned out of the car window with an object in his hand and told appellee: "You're dead you piece of shit. Wait until I get done with you."

In addition to the drive-by conduct, Rosaly operated a drone over appellee's residence on at least three occasions. When viewed together with the drive-bys, Rosaly's use of a drone supports the issuance of an injunction. The record reveals no legitimate purpose for Rosaly's course of conduct.

The use of a drone can contribute to causing a person substantial emotional distress under section 784.048(1)(a).

The Florida legislature amended section 934.50, Florida Statutes, in 2015 to prohibit certain conduct involving drones. The staff analysis for the amendment recognized that "drones possess capabilities which could be used by private individuals . . . to breach reasonable expectations of privacy, including the voyeuristic actions of spying on and recording private acts." Fla. S. Comm. on Judiciary, CS/SB 766 (2015), Post-Meeting Staff Analysis 3 (March 26, 2015), https://www.flsenate.gov/Session/Bill/2015/766/Analyses/2015s0766.

ju.PDF. "[D]rones can be equipped with a wide array of sensory equipment, including high-magnification lenses, infrared, ultraviolet and see-through imaging devices, acoustical eavesdropping devices, laser optical microphones, and face and body recognition software." *Id.* "[O]ne drone outfitted with the proper equipment could" "watch a building," "look inside the building," and "listen[] to conversations taking place inside" "all [] at once." *Id.* at 3–4.

As a result of this privacy concern, the Florida legislature amended section 934.50, Florida Statutes, in 2015. Section 934.50, as amended, imposes limits on the use of a drone. § 934.50, Fla. Stat. (2021). The statute prohibits a person from using "a drone equipped with an imaging device to record an image of . . . the . . . tenant [of a privately owned real] property with the intent to conduct surveillance on the individual or property captured in the image in violation of such person's reasonable expectation of privacy without his or her written consent." § 934.50(3)(b), Fla. Stat. (2021).

An aggrieved person "may initiate a civil action for compensatory damages for violations of this section and may seek injunctive relief to prevent future violations of this section against a person." § 934.50(5)(b), Fla. Stat. (2021).

While appellee might be entitled to initiate an action under section 934.50, given the potential for invasion of privacy, we conclude that use of a drone is conduct that could contribute to substantial emotional distress under section 784.048(1)(a) of the stalking statute.[1]

The Third District has recognized that surveillance by a drone could be considered stalking. *See Raulerson v. Font*, 277 So. 3d 1057, 1063 (Fla. 3d DCA 2018). *Raulerson* observed that the allegation of respondent watching petitioner by means of a remote drone might be actionable but in that case there was "no information regarding the date or actual observation by any drone." *Id.* The court noted that surveillance is among the "[t]ypical hallmarks of stalking and cyberstalking." *Id.*

---

[1] We note that out-of-state statutes and cases consider the use of drones to surveil as stalking. *See* Kan. Stat. Ann. § 60-31a02(d)(1) (West 2021); *C.M. for & on behalf of A.M. v. McKee*, 398 P.3d 228, 231 (Kan. Ct. App. 2017); *Sullivan v. Kubanyi*, 863 S.E.2d 727, 728–29 (Ga. Ct. App. 2021) (affirming in part the award of a protective order under Ga. Code Ann. § 16-5-90(a) when appellant "engaged in a pattern of harassing or intimidating behavior" including, among other things, "follow[ing] [the victim] by drone, s[itting] a drone outside of her residence every night for months, and continu[ing] such monitoring even after she moved").

We reverse that portion of the final judgment involving time-sharing and no contact with the parties' minor children.

Section 784.0485 does not provide authority for making a custody determination in a final judgment for protection against stalking. *Compare* § 784.0485(6)(a), Fla. Stat. (2021) (enumerating the relief a court may grant in a stalking injunction, which does not expressly include a change in custody), *with* § 741.30(6)(a), Fla. Stat. (2021) (enumerating the relief a court may grant in a domestic violence injunction, which expressly includes "providing the petitioner with 100 percent of the time-sharing in a temporary parenting plan" on "the same basis as provided in Chapter 61").

It appears that the trial court was trying to shoehorn a custody determination into the generic provision authorizing courts in stalking cases to award "such other relief as the court deems necessary for the protection of a victim" of stalking, "including injunctions or directives to law enforcement agencies, as provided in this section." But that statutory language is contained in both sections 784.0485 and 741.30, so the provision in the stalking statute cannot be interpreted as encompassing a child custody determination, particularly where that provision does not reference Chapter 61 or the best interests of the children. If the legislature had intended section 784.0485 to allow for custody determinations, it could have said so, as it did in section 741.30.

In addition, Appellee did not file a petition on behalf of her children seeking exclusive time sharing. "[C]ourts are not authorized to award relief not requested in the pleadings." *Stover v. Stover*, 287 So. 3d 1277, 1279 (Fla. 2d DCA 2020) (quoting *Abbott v. Abbott*, 98 So. 3d 616, 617–18 (Fla. 2d DCA 2012)). "A trial court violates due process and reversibly errs when it awards relief not sought by the pleadings." *Schot v. Schot*, 273 So. 3d 48, 51 (Fla. 4th DCA 2019) (citing *McDonald v. McDonald*, 732 So. 2d 505, 506 (Fla. 4th DCA 1999)).

*Affirmed in part, reversed in part.*

CIKLIN and KUNTZ, JJ., concur.

\*       \*       \*

**Not final until disposition of timely filed motion for rehearing.**

5