# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

BRITTANY BUDLOVE,

Appellant,

v.

WILLIAM JOHNSON,

Appellee.

BRITTANY BUDLOVE,

Appellant,

v.

JOENETTA JOHNSON,

Appellee.

BRITTANY BUDLOVE,

Appellant,

v.

SUSANNE CAMPBELL,

Appellee.

BRITTANY BUDLOVE,

Appellant,

v.

TANYA LEWIS,

Appellee.

BRITTANY BUDLOVE,

Appellant,

v.

RAFAELA McCOY,

Appellee.

Nos. 2D22-1549, 2D22-1550, 2D22-1551, 2D22-1552, 2D22-1553
CONSOLIDATED

_____

December 29, 2023

Appeal from the Circuit Court for Pasco County; Lauralee Ganson
Westine, Judge.

Dayna Maeder of Maeder Infantolino, LLC, Jupiter, for Appellant.

N. Rivver Cox and Anthony M. Innacio of Bush Graziano Rice & Platter,
P.A., Tampa, for Appellee, Tanya Lewis.

No appearance for remaining Appellees.

ATKINSON, Judge.

Brittany Budlove appeals an April 8, 2022, order granting the
petitions of the five appellees—William Johnson, Joenetta Johnson,
Susanne Campbell, Tanya Lewis, and Rafaela McCoy—for protection
against stalking pursuant to sections 784.0485 and 784.048, Florida
Statutes (2021).[1]  We affirm the entry of all five injunctions for stalking
and reject without discussion Budlove's argument that there was

_____

[1] The five cases are consolidated for the purposes of the opinion.

2

insufficient evidence for the trial court to impose the injunctions against her pursuant to sections 784.0485 and 784.048. However, the scope of all five injunctions exceeds that which is allowed by the First Amendment to the United States Constitution by imposing a prior restraint on protected speech. To the extent that they do so, the injunctions must be reversed in part.

On January 15, 2021, the trial court issued a final judgment terminating Budlove's parental rights with regard to T.B., Budlove's biological child. Each of the appellees was involved in the dependency case that led to the termination.

During the period between the filing of the petition for termination of parental rights and the order terminating Budlove's parental rights, Budlove was twice ordered to refrain from either contacting some of the appellees or posting certain information on online platforms. On December 21, 2020, Ms. Johnson requested, and the trial court issued, a "no contact order" against Budlove and her now ex-husband, John Budlove. The order stated that Brittany and John Budlove were not to have any "direct, indirect, or third person contact with the caregiver, Joenetta Johnson," were to "remain at least 500 feet from Joenetta Johnson's residence, place of employment, and/or any other place Ms. Johnson is," and were not "permitted to have any written, telephonic, electronic, or social media contact with Ms. Johnson."

Then, on August 17, 2021, the trial court found that Budlove had been posting

> multiple videos and information on social media, including, but not limited to the following: unredacted police reports from the investigation; confidential information about the child [T.B.] and the child, M.B.; photos of the child, T.B.; details from mediation; and names of all parties, including

3

judges, attorneys, CPIs, detectives, and the caregiver.[2] The trial court ordered Budlove to "remove all confidential information relating to [T.B.'s dependency case] from online or from any posting sites within twenty-four (24) hours of service of [the] order."

After learning that Budlove continued to post some things online related to the dependency case even after the August 17 order—although Budlove maintains that none of those posts violated the orders—the five appellees all filed petitions for injunctions against Budlove for stalking. At hearings on the petitions, the appellees claimed that Budlove was harassing and cyberstalking them and causing Budlove's followers on social media platforms to do the same. On April 8, 2022, the trial court announced that it was granting all five petitions for injunctions against Budlove for stalking. The written order broadly prohibits Budlove from having any contact with the appellees. And "adding to the traditional language in the injunctions," the trial court ordered Budlove in open court to "not post online anything relating to [T.B.'s] dependency case." The trial court explained that "[t]his includes, but is not limited to, the names of parties related to the case, such as case managers, Assistant State Attorneys, caregivers, or other children in this case." The written order then stated the following: "[Budlove] shall not post on social media about case [redacted], includ[ing] but not limited to case managers, parties, and other minor children to [the] case. Anything already posted on social media about case #[redacted] shall be removed." While Budlove does not argue on appeal that the *entry* of the injunctions violated the First Amendment, Budlove argues that the prohibitions of the injunctions against her are unconstitutional *prior restraints* on

---

[2] M.B. is Budlove's ex-husband's niece and was previously in the care of Budlove and her ex-husband.

speech.  *See Alexander v. United States*, 509 U.S. 544, 550 (1993) (noting the "distinction, solidly grounded in our cases, between prior restraints and subsequent punishments").

Constitutional issues are "question[s] of law subject to de novo review."  *See State v. Adkins*, 96 So. 3d 412, 416 (Fla. 2012) (quoting *Crist v. Ervin*, 56 So. 3d 745, 747 (Fla. 2011)).  States are prohibited from "abridging the freedom of speech."  *See* amend. I, U.S. Const.; *see also Virginia v. Black*, 538 U.S. 343, 358 (2003) (noting that the First Amendment is applicable to the states).  The First Amendment requires courts to scrutinize restrictions on "expression because of its message, its ideas, its subject matter, or its content."  *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983)).  Content-based "[p]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."  *Concerned Citizens for Jud. Fairness, Inc. v. Yacucci*, 162 So. 3d 68, 73 (Fla. 4th DCA 2014) (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)).  "Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints."  *Alexander*, 509 U.S. at 550.  And "[a]ny form of prior restraint of expression comes to a reviewing court bearing a heavy presumption against its constitutional validity; therefore, the party who seeks to have such a restraint upheld carries a heavy burden of showing justification for the imposition of such a restraint."  *State ex rel. Miami Herald Publ'g Co. v. McIntosh*, 340 So. 2d 904, 908 (Fla. 1976) (first citing *N.Y. Times Co. v. United States*, 403 U.S. 713 (1971); and then citing *Bantam Books v. Sullivan*, 372 U.S. 58 (1963)).

Neither the government nor courts may restrain speech "based on hostility—or favoritism—towards the underlying message expressed." *R.A.V. v. City of Saint Paul,* 505 U.S. 377, 386 (1992). "[C]ontent-based restrictions on speech have been permitted, as a general matter, only when confined to the few 'historic and traditional categories [of expression] long familiar to the bar.' " *United States v. Alvarez,* 567 U.S. 709, 717 (2012) (alteration in original) (quoting *United States v. Stevens,* 559 U.S. 460, 470 (2010)). Otherwise, content-based speech restrictions "may be justified only if . . . they are narrowly tailored to serve compelling state interests." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra,* 138 S. Ct. 2361, 2371 (2018) (quoting *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015)). A speech restriction is not narrowly tailored when the restriction regulates "in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *See Ward v. Rock Against Racism,* 491 U.S. 781, 799 (1989).

"There is no categorical 'harassment exception' to the First Amendment's free speech clause." *Saxe v. State Coll. Area Sch. Dist.,* 240 F.3d 200, 204 (3d Cir. 2001); *see also NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 909–10 (1982) (holding that "[s]peech does not lose its protected character" even when the speech involved publicly listing the names of individuals who did not participate in a boycott); *Org. for a Better Austin v. Keefe,* 402 U.S. 415, 420 (1971) (holding that First Amendment protection applied to the distribution of leaflets when those leaflets accused an individual of racism and provided personal information about the person, including his telephone number). While the Florida Legislature has found that individuals should under some circumstances be entitled to an injunction against harassment even when that harassment unquestionably limits a person's speech, *see, e.g.,*

6

§§ 784.0485(1) ("For the purposes of injunctions for protection against stalking under this section, the offense of stalking shall include the offense of cyberstalking."); 784.048(1)(d)1 (" 'Cyberstalk' means . . . [t]o engage in a course of conduct to communicate, or to cause to be communicated, directly or indirectly, words, images, or language by or through the use of electronic mail or electronic communication, directed at or pertaining to a specific person . . . ."), courts are not permitted to enjoin a course of conduct to the extent that it encompasses constitutionally protected activity, *see* § 784.048(1)(b) (specifying that the "[c]ourse of conduct" constituting cyberstalking "does not include constitutionally protected activity such as picketing or other organized protests"). Here, the scope of the injunction exceeds that which is permitted under the First Amendment by enjoining a course of conduct that includes activity that is constitutionally protected. *See Neptune v. Lanoue*, 178 So. 3d 520, 522 (Fla. 4th DCA 2015) ("The injunction issued by the trial court [against cyberstalking] is impermissibly broad and, insofar as it states 'the Respondent shall not "post" on the Internet regarding the Petitioner,' in violation of Appellant's First Amendment right to free speech.").

Injunctions which prevent "communications *to*" an individual can be permissible under the First Amendment, but those enjoining "communications *about*" an individual are generally unlawful prior restraints. *David v. Textor*, 189 So. 3d 871, 876 (Fla. 4th DCA 2016) (emphasis in original); *accord DiTanna v. Edwards*, 323 So. 3d 194, 203–04 (Fla. 4th DCA 2021); *Krapacs v. Bacchus*, 301 So. 3d 976, 980 (Fla. 4th DCA 2020) ("[W]e find that the portion of the trial court's order prohibiting Krapacs 'from posting Nisha Bacchus, Nisha Elizabeth Bacchus or any part thereof, on any social media or internet websites' "

7

and ordering him to " 'take down all social media and internet posts that reference Nisha Bacchus, Nisha Elizabeth Bacchus, or any part thereof immediately' is overbroad.").  This distinction is consistent with several United States Supreme Court decisions, in which the Court distinguished in principle between communications directed at a single person and communications directed to the public.  *See, e.g., Org. for a Better Austin*, 402 U.S. at 420 (holding that a party could not enjoin individuals from distributing leaflets that criticized the party's business practices anywhere in a city because, in part, he was "not attempting to stop the flow of information into his own household, but to the public"); *Rowan v. U.S. Post Off. Dep't*, 397 U.S. 728, 738 (1970) (upholding a ban on mailings sent to people who demanded that the mailer stop sending them mail because the restriction was on speech written to an unwilling reader because "no one has a right to press even 'good' ideas on an unwilling recipient"); *see also Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.").

Despite use of the qualifier "generally," our concurring colleague misreads the preceding paragraph as describing a categorical proscription on injunctions that enjoin speech *about* an individual.  To the contrary, we would agree with our concurring colleague that whether the communication is directed *at* an individual or merely *pertains to* an individual is not necessarily "the determining factor."  The distinction is, however, *a* factor, as First Amendment jurisprudence makes clear.  And injunctions that enjoin the latter are likely to offend the Constitution because they constitute a content-based restriction on speech.

Similarly, our concurring colleague erroneously suggests that the majority opinion requires that the trial court upon remand must be limited to enjoining only activity "directed at" the appellees. Nothing in this opinion does, or should be construed to, so narrowly confine the trial court's discretion upon remand.

Our concurring colleague also points out that some case law relied upon in the majority opinion predates the most recent amendment to section 784.048, which added the phrases "directly or indirectly" and "pertaining to" to the definition of cyberstalking. In those cases decided before the statute was amended, the relevant analysis is that of the provisions of the injunction or restraint under review and whether those proscriptions pass muster under the Constitution, not whether they satisfy the criteria of the applicable injunction statute. Without conceding that the only way to read those opinions is to infer a holding that enjoining communications *about* an individual constitutes a per se unconstitutional restraint on speech, we do agree with our concurring colleague insofar as he cautions against such a bright-line rule—which would not take into account communications about individuals that constitute *unprotected* speech such as incitement.

In this case, the injunctions granted against Budlove do not merely prohibit Budlove from having any contact with the appellees, sending communications to the appellees, or causing others to send communications to the appellees or inflict some manner of harm against them. In addition to preventing any contact with or communications *to* the appellees, the trial court ordered that Budlove cease communicating publicly *about* the appellees, ordering that she refrain from "post[ing] online *anything relating to [T.B.]'s dependency case.*" (Emphasis added.). In other words, the injunctions prevent Budlove from engaging in public

9

speech about a court proceeding and the individuals involved. This content-based prior restraint on speech is not tailored at all, much less narrowly tailored. The prospective proscriptions on Budlove's social media communications are, for example, not confined to constitutionally unprotected speech such as "fighting words," "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction," *see Cohen v. California*, 403 U.S. 15, 20 (1971) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)); "true threats," "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," *see Black*, 538 U.S. at 359; or "incitement," communications " 'directed [at] producing imminent lawless action,' and likely to do so," *see Counterman v. Colorado*, 600 U.S. 66, 73 (2023) (alteration in original) (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)).

To the extent that the injunctions broadly prohibit Budlove from merely making public statements about the appellees, T.B., or her dependency case, the injunctions are overbroad and impermissibly enjoin a constitutionally protected course of conduct. *See* § 784.084(1)(b); *Krapacs*, 301 So. 3d at 980 ("A regulation of speech that 'references' Bacchus is necessarily a regulation of the subject matter of that speech."). The entry of the injunctions granted to William Johnson, Joenetta Johnson, Susanne Campbell, Tanya Lewis, and Rafaela McCoy are affirmed in part, but the injunctions are reversed to extent that they enjoin Budlove from engaging in constitutionally protected speech by making public statements not sent directly to the appellees.

Affirmed in part, reversed in part, and remanded.

10

VILLANTI, J., Concurs.
SLEET, C.J., Concurs in result with opinion.

SLEET, C.J., Concurring.

I concur with the result reached by the majority in that I agree that the trial court did not err in finding the existence of prior stalking warranting entry of the injunctions at issue in this case. I also agree with the majority that, as written, the injunctions restrain Budlove from future conduct that is constitutionally protected activity. However, I disagree with the majority's conclusion as to what communications the trial court's injunctions can and cannot enjoin Budlove from making.

Section 784.085(1), Florida Statutes (2021), "create[s] a cause of action for an injunction for protection against stalking" and states that "[f]or the purposes of injunctions for protection against stalking under this section, the offense of stalking shall include the offense of cyberstalking." To be entitled to the issuance of such an injunction, "[t]he sworn petition shall allege the existence of such stalking and shall include the specific facts and circumstances for which relief is sought." § 784.085(3)(a). "Upon notice and hearing, when it appears to the court that the petitioner is the victim of stalking, the court may grant such relief as the court deems proper, including an injunction . . . [r]estraining the respondent from committing any act of stalking." § 784.0485(6)(a)1.[3] However, in fashioning such a remedy, the court is necessarily restrained by the statutory definition of stalking, and because the statute

---

[3] The statute also allows for injunctions "[o]rdering the respondent to participate in treatment, intervention, or counseling services," "[r]eferring a petitioner to appropriate services," and "[o]rdering such other relief as the court deems necessary for the protection of a victim of stalking, including . . . directives to law enforcement agencies." § 784.0485(6)(a)2-4.

11

specifically states that stalking includes cyberstalking, the court also must fashion a remedy within the statutory definition of cyberstalking.

Section 784.048(1)(d)1 defines cyberstalking as

[t]o engage in a *course of conduct* to communicate, or to cause to be communicated, directly or indirectly, words, images, or language by or through the use of electronic mail or electronic communication, directed at or pertaining to a specific person . . . causing substantial emotional distress to that person and serving no legitimate purpose.[4]

(Emphasis added.)

A course of conduct is defined in the statute as "a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose." § 784.048(1)(b). Importantly, the statute specifically states that "[t]he term does not include constitutionally protected activity." *Id.*

Accordingly, in order to be entitled to entry of an injunction based on an allegation of cyberstalking, a petitioner needs to allege and prove that the respondent has already electronically communicated to the respondent words, images, or language that are directed at the respondent or that pertain to the respondent OR that the respondent has directly or indirectly caused such words, images, or language to have been communicated to the respondent AND that the communication of the particular words, images, or language caused the respondent substantial emotion distress AND that there was no legitimate purpose behind the communication of the particular words, images, or language. *See* § 784.048(1)(b), (d)1. Furthermore, once a petitioner has met this burden, the remedy fashioned by the trial court may include enjoining the respondent from further acts of stalking (including cyberstalking) but

---

[4] Section 784.048(1)(d)2 provides an alternate definition of cyberstalking that is not applicable to the instant case.

may not include enjoining the respondent from engaging in "constitutionally protected activity." *See id.*

Here, the allegations of the petitioners all stem from a dependency case in which Budlove's parental rights were terminated. The final order of injunction includes the following language: "Respondent shall not post on social media about [the dependency case] includ[ing] but not limited to case managers, parties, and other minor children to case. Anything already posted on social media about [the dependency case] shall be removed."

On appeal, Budlove first argues that the trial court erred in entering the injunction because petitioners failed to establish the previous existence of cyberstalking as defined in the statute.[5] She maintains that petitioners failed to show that her communications served no legitimate purpose, that they resulted in substantial emotional

---

[5] In the summary of the argument section of her initial brief before this court, Budlove argues: "The order granting the cyberstalking injunction must be reversed because the necessary legal elements were not proven. In order for an injunction to be *entered*, Appellee[s were] required to prove the posts had no legitimate purpose, that they were directed to Appellee, and that Appellee experienced substantial emotional distress." (Emphasis added.) She further argues that "[b]ecause Appellee[s] failed to prove even one of these elements by competent, substantial evidence, let alone all three required elements, this court should reverse and remand with instructions *to dissolve the injunction.*" (Emphasis added.) In the argument section of her brief, she challenges the basis upon which the injunction was entered by making specific arguments as to how her previous posts did not amount to cyberstalking. Finally, in her conclusion section, Budlove states, "The lower court erred in its legal analysis of the statutory requirements for *entering an injunction,* and the evidence does not support its findings." (Emphasis added.)

13

distress suffered by petitioners, or that they were directed at petitioners.[6] I find no merit to these arguments.

Petitioners presented evidence that in her electronic posts, Budlove included their contact information, signaled that she condoned slapping by stating that "someone needs to slap her . . . . I aint saying kill nobody but you . . . could slap the s___ out of somebody every once and a while,"[7] and intimated threats by stating that no one involved in the dependency case would ever be able to live in happiness or bliss, that no one involved in the case would go unpunished, and that if she could not parent her child, no one involved would be able to parent theirs. These communications served no legitimate purpose and certainly do not qualify as fundraising, protest, or activism as Budlove argues on appeal.

---

[6] I also note that much of Budlove's argument on appeal is boilerplate argument that cites case law but then only makes bold conclusory statements without pointing to support in the instant records. She argues that her social media postings were made for "fundraising," "protest," or "activism" but fails to discuss any specific statements or explain how they fall into one of these categories. When arguing that petitioners had failed to establish substantial emotional distress, she does not make any arguments regarding any specific petitioner or their testimony regarding their emotional distress. Nor does she explain how her specific statements would not cause substantial emotional distress in a reasonable person. Based on these deficiencies alone, this court could conclude that Budlove has failed to meet her burden of establishing trial court error with regard to entry of the injunction. *See generally Coolen v. State*, 696 So. 2d 738, 742 n.2 (Fla. 1997) ("[F]ailure to *fully* brief and argue [points on appeal] constitutes a waiver. . . ." (emphasis added)); *Thurman v. Davis*, 321 So. 3d 341, 344 (Fla. 1st DCA 2021) ("The burden is on the appellant to demonstrate reversible error . . . ." (quoting *JP Morgan Chase Bank v. Combee*, 883 So. 2d 330, 331 (Fla. 1st DCA 2004))).

[7] It is unclear in context who the "her" is to whom Budlove was referring, but as the trial court pointed out, it was said in a video post about this case, wherein four of the five petitioners are women.

14

*See Craft v. Fuller*, 298 So. 3d 99, 104-05 (Fla. 2d DCA 2020) ("Whether the purpose for [a particular] [communication] is 'legitimate' is evaluated on a case-by-case basis. . . . However, courts have generally held that [communication] is legitimate when there is a reason for the [communication] other than to harass the victim.' " (first alteration in original) (quoting *Venn v. Fowlkes*, 257 So. 3d 622, 624 (Fla. 1st DCA 2018))). And I find no error in the trial court's conclusion that a reasonable person would be caused substantial emotional distress by Budlove's posts. *See generally id.* at 104 ("In the context of a petition for protection against cyberstalking, the question of '[w]hether a communication causes substantial emotional distress should be narrowly drawn and is governed by the reasonable person standard.' " (alteration in original) (quoting *Scott v. Blum*, 191 So. 3d 502, 504 (Fla. 2d DCA 2016))).

With regard to Budlove's argument that her posts do not amount to cyberstalking because they were not directed at petitioners, section 784.048 was amended in 2021 to add the bolded words in the following definition of "cyberstalking": " 'Cyberstalk' means . . . [t]o engage in a course of conduct to communicate, or to cause to be communicated, **directly or indirectly**, words, images, or language by or through the use of electronic mail or electronic communication, directed at **or pertaining to** a specific person . . . ." *See* ch. 2021-220, § 1, Laws of Fla.; *see also* § 784.048(1)(d)1.

Although Budlove cites and quotes the 2021 version of the statute in her briefs before this court, she ignores the language added by the 2021 amendment and cites only preamendment case law for the proposition that because she did not direct her social media posts at petitioners, her posts do not meet the statutory definition of

15

cyberstalking.  But this court does not have the luxury of ignoring words and phrases contained in a statute; "[i]n interpreting the statute, we follow the 'supremacy-of-text principle—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey in their context, is what the text means.' " *Ham v. Portfolio Recovery Assocs.*, 308 So. 3d 942, 946 (Fla. 2020) (second alteration in original) (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)).  Furthermore, the cases that Budlove cites to support her contention all involve preamendment versions of section 784.048, none of which included communications *pertaining to* an individual in the definition of "cyberstalking."

But Budlove also argues that she had a First Amendment right to publish the posts that she previously made on her social media outlets and that the injunction is a continuing infringement on her right to freedom of speech.[8]  Because Budlove is incorrect in her assertion that all of her prior postings were constitutionally protected, *see, e.g.*, *Counterman*, 600 U.S. at 76 (recognizing that the First Amendment allows for "punishment [for incitement], whether civil or criminal [where] the speaker's words were 'intended' (not just likely) to produce imminent

---

[8] In her initial brief, Budlove designated her First Amendment argument as point d under heading 1, which is titled,"There was no evidence provided, and no findings made, that made the three-prong test to prove cyberstalking."  That heading has five points lettered a through e: (a) Substantial emotional distress, (b) Directed at Appellee, (c) No legitimate purpose, (d) First Amendment rights, and (e) Cyberstalking overall.  Under point d, Budlove quotes *David*, 189 So. 3d at 875, for the proposition that "[s]ection 784.048 itself recognizes the First Amendment rights of individuals by concluding that a 'course of conduct' for purposes of the statute does not include protected speech."  I interpret this as clearly arguing that the *entry* of the injunction violated her First Amendment rights.

16

disorder"), this argument does not establish error with regard to the granting of the injunctions. I therefore conclude that the trial court did not abuse its discretion in imposing the injunctions. *See Washington v. Brown*, 300 So. 3d 338, 340 (Fla. 2d DCA 2020).

However, as to the remedy fashioned by the trial court in crafting the language of these injunctions, I agree with Budlove—and with the majority opinion—that the plain language of the injunctions improperly encompasses some "constitutionally protected activity." *See* § 784.048(1)(b) ("The term [course of conduct used in the definition of cyberstalking] does not include constitutionally protected activity."); *see also Smith v. Short*, 332 So. 3d 1064, 1067 (Fla. 2d DCA 2021) (stating that an injunction should not be "broader than necessary to protect the injured party under the particular circumstances" and "should be adequately particularized, especially where some activities may be permissible and proper" (quoting *Smith v. Wiker*, 192 So. 3d 603, 604 (Fla. 2d DCA 2016))).

However, I disagree with the majority's assertion that in determining what is or is not "constitutionally protected activity" the court should focus on whether the communication is *directed at* the individual seeking the injunction or whether it merely *pertains to* the individual. Although the majority attempts to assert that what it really is saying is that this distinction is only but one factor that should be considered in determining constitutional protections, its final conclusion betrays that assertion by stating that the injunctions "enjoin Budlove from engaging in constitutionally protected speech by making public statements not sent directly to appellees." Thus, whether it intends to or not, the majority is saying that making public statements not sent

17

directly to the individual who is the subject of the statements is necessarily constitutionally protected speech. I cannot agree with that.

The majority relies on three cases out of the Fourth District in reaching this conclusion: *David*, 189 So. 3d 871; *DiTanna*, 323 So. 3d 194; *Krapacs*, 301 So. 3d 976.

*David* involved a business dispute between David and Textor, owners of competing video production companies that had filed lawsuits against each other. Textor sought an ex parte injunction for protection against stalking against David, alleging cyberstalking. The alleged acts of cyberstalking consisted of (1) a text from David to Textor stating that David would drop his lawsuit against Textor if Textor would give David credit for previous work; (2) "an email from David to business associates (other than Textor) that he had more information about Textor that would be released soon, but not specifying what that information was"; (3) an online magazine article in which David was quoted saying that he "would have killed Textor if he could"; (4) "articles about Textor that David posted and reposted in various online outlets"; and (5) an email sent from David to Textor threatening to release embarrassing information about Textor if Textor did not settle their pending lawsuits. 189 So. 3d at 873-74.

The trial court in *David* entered an injunction "prohibiting David from communicating with Textor or posting any information about him online, and ordering that he remove any materials he already had posted from the websites." *Id.* at 874. On appeal, David argued that "the conduct alleged in Textor's ex parte petition for the injunction does not constitute cyberstalking, and the injunction violates the First Amendment." 189 So. 3d at 873.

18

The Fourth District, analyzing the 2014 preamendment version of section 784.048, concluded that the trial court erred in finding the existence of cyberstalking. The court concluded that "none of the allegations in Textor's petition show acts constituting cyberstalking, in that a reasonable person would not suffer substantial emotional distress over them" and that "[t]hose communications made directly to Textor served a legitimate purpose." *Id.* at 876.

But instead of stopping at reversal based on this sound reasoning, as it should have, *see Liner v. Workers Temporary Staffing, Inc.*, 990 So. 2d 473, 482 (Fla. 2008) ("In Florida, it is well established that this Court should refrain from deciding the constitutional questions when the case may be resolved on other grounds."), the Fourth District proceeded to the First Amendment issue and tied the statutory phrase "words, images, or language . . . directed at a specific person" in the definition of cyberstalking found in the 2014 version of section 784.048(1)(d)1 to its constitutional analysis. The *David* opinion continued:

> An injunction in this case would also violate First Amendment principles. "[A] temporary injunction directed to speech is a classic example of prior restraint on speech triggering First Amendment concerns." *Vrasic v. Leibel,* 106 So. 3d 485, 486 (Fla. 4th DCA 2013). An injunction may not be directed to prevent defamatory speech. *Id.* at 487; *Chevaldina,* 133 So. 3d at 1090. " '[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.' " *Concerned Citizens for Judicial Fairness, Inc. v. Yacucci,* 162 So. 3d 68, 73 (Fla. 4th DCA 2014) (quoting *Neb. Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976)). Section 784.048 itself recognizes the First Amendment rights of individuals by concluding that a "course of conduct" for purposes of the statute does not include protected speech. § 784.048(1)(b), Fla. Stat. (2014). This includes speech that may be offensive or vituperative. *See Watts v. U.S.,* 394 U.S. 705, 708 (1969).

> Here, the online postings simply provide information, gleaned from other sources, regarding Textor and the many lawsuits against him.  The injunction prevents not only communications *to* Textor, but also communications *about* Textor.  Such prohibition by prior restraint violates the Constitution.  If David's communications about Textor are defamatory, then Textor can sue David for damages.

*David*, 189 So. 3d at 876 (underlined emphasis added).

Nothing in the first paragraph of this quotation states that communications that are about a person but not directed to that person are constitutionally protected based on that specific classification alone. Nevertheless, the Fourth District went on to conclude in the second paragraph, without any further citation to authority, that "[t]he injunction prevents not only communications *to* Textor, but also communications *about* Textor.  Such prohibition by prior restraint violates the Constitution." *Id.*  By doing so, the Fourth District created a bright-line rule where none had previously existed.

In three subsequent cases, the Fourth District quoted *David* for the unsupported proposition that where an "injunction prevents not only communication *to* [petitioner], but also communications *about* [petitioner,] [s]uch prohibition by prior restraint violates the Constitution." *DiTanna*, 323 So. 3d at 203 (quoting *David*, 189 So. 3d at 876); *see also Krapacs*, 301 So. 3d at 980-81; *O'Neill v. Goodwin*, 195 So. 3d 411 (Fla. 4th DCA 2016).  I can find no other district court opinion in Florida that has adopted a bright-line rule that enjoining communications *about* an individual is per se a constitutional violation and not simply a violation of the plain language of the preamendment

statute.[9]  I believe that *David* and the three Fourth District cases that quote it amount to an outlier in this regard.

Furthermore, the United States Supreme Court cases that the majority cites do not turn on a "communications directed at" versus "communications pertaining to" analysis.  *See Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419-20 (1971) (reversing an injunction that prevented the distribution of pamphlets containing statements *about* an individual and his business practices on the basis that "the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets [did not] warrant[] use of the injunctive power of a court" and concluding that *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728 (1970), relied on by respondent, was factually distinguishable as it involved homeowners who sought to prevent junk mail from being delivered to their homes under a federal statute); *Rowan*, 397 U.S. at 729, 738 (affirming district court ruling that Title III of the Postal Revenue and Federal Salary Act of 1967, "under which a person may require that a mailer remove his name from its mailing lists and stop all future mailings to the householder," was constitutional and "reject[ing] the argument that a vendor has a right under the Constitution or otherwise to send unwanted material into the home of another" and that "[t]he asserted right of a mailer . . . stops at the outer boundary of every person's domain"); *Reed*, 576 U.S. at 163 (addressing whether a town ordinance was a content-based restriction on free-speech and concluding

_____

[9] In fact, in *Scott v. Blum*, 191 So. 2d 502, 503-04 (Fla. 2d DCA 2016), this court cited *David* as support for its conclusion that the injunction entered in that case did not meet the preamendment statutory requirements because the communication was not directed at the petitioner, but this court stopped short of the constitutional questions, stating, "We agree that Mr. Blum failed to meet his evidentiary burden and reverse.  As a result, we do not reach the First Amendment issue."

that the town had failed to meet its "burden to demonstrate that the Code's differentiation between temporary directional signs and other types of signs, such as political signs and ideological signs, furthers a compelling governmental interest and is narrowly tailored to that end").

Surely, communications about an individual but not directed to that individual that incite others to violence are not constitutionally protected activity. *See Counterman*, 600 U.S. at 73 (recognizing that First Amendment recognizes communications "directed [at] producing imminent lawless action" (alteration in original) (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969))). Accordingly, I conclude that the trial court could enjoin Budlove from making future statements about the petitioners that incite others to violence against petitioners—regardless of whether those communications are directed at petitioners—without violating her First Amendment rights. However, the injunctions' broad ban on Budlove's posting anything at all about the dependency case is not particularly drawn and encompasses "activities [that] may be permissible and proper." *See Smith*, 332 So. 3d at 1067. Accordingly, I agree that portion of the final order must be reversed.

Finally, I would point out that the majority's reasoning creates a conflict between its conclusion that the entry of the injunctions should be affirmed and its conclusion that the scope of the injunctions should be reversed because they "enjoin Budlove from engaging in constitutionally protected speech by making public statements *not sent directly to appellees*." (Emphasis added.) In order to be entitled to entry of an injunction under section 784.085(3)(a), the sworn petition must allege the prior existence of stalking, and in order for the court to grant injunctive relief under section 784.085(6)(a), it must find "that the petitioner is the victim of stalking." In the instant case, all of the

22

allegations of cyberstalking alleged in the petitions seeking these injunctions describe solely communications *pertaining to* the petitioners, and the trial court's oral findings indicate that the communications it found to be prior instances of stalking consist solely of communications *pertaining to* the petitioners that were not sent directly to them. If the majority is convinced that communications *pertaining to* but not *directed at* the petitioner are excluded from the definition of "course of conduct" in section 784.048(1)(b) because they are "constitutionally protected activity"—and then necessarily excluded from the definitions of cyberstalking in section 784.048(1)(d) and stalking in section 784.085(1)—then how can the majority find no error in the trial court's determination that petitioners were the victims of previous acts of stalking based on communications that only *pertained to* petitioners? I do not think the majority can logically have it both ways.

In conclusion, because many of Budlove's communications pertaining to petitioners amounted to incitements to unlawful actions, I agree that the portion of the trial court's orders finding the existence of previous stalking and thus imposing the injunctions should be affirmed. However, I would reverse the injunctions only to the extent that they prohibit constitutionally protected activity and remand for the trial court to more narrowly craft the injunctions to ensure that no constitutionally protected activity is enjoined, but I would not limit the trial court to prohibiting only communications *directed at* petitioners. Finally, I would certify conflict with the Fourth District's *David* line of cases that suggest a bright-line rule that a prohibition by prior restraint on any communications about a petitioner violates the Constitution.

———————————————

23

Opinion subject to revision prior to official publication.